## G. BROWN v. R. E. MONTGOMERY.

### No. 392.—Decided February 20, 1896.

**1. Vendor's Lien—Executed Contract.**

Where a grantor executes a deed, but reserving the vendor's lien, such deed, so. far as concerns the vendee's right to defend against the note for failure of title, must be considered an executed contract. (May v. Taylor, 27 Texas, 125; Ogburn v. Whitlow, 80 Texas, 239.) (P. 253.)

**2. Failure of Title—Degree of Proof—Case Limited.**

The decision in Cooper v. Singleton, 19 Texas, 267, was upon the certainty required of the pleader in setting up his defense of failure of title in the land for which the note sued on was executed; it had no reference to the intensity of the proof required to support such plea. Such failure of title is not required to be proved beyond doubt, but only as are the issues in other civil cases. (P. 253.)

**3. Vendor and Vendee—Failure of Title—Fact Case.**

A vendee who had no opportunity to investigate the records and relied upon the representations of the vendor that the records showed a perfect title and no incumbrances, and that if there were any liens he would obtain a release before maturity of the purchase money notes, paid part cash and executed two notes for the deferred payments and made valuable improvements upon the land. In suit upon the notes defense showed a mortgage of $400,000 upon this and other lands, of record at the date of the sale and not released. The facts appearing under sufficient pleadings and defendant testifying that he did not intend to take the risk of the defect, it was error to direct a verdict for the plaintiff. The facts showed a sufficient ground to postpone execution until the lien should be removed. (Pp. 254, 255.)

**4. Pleading Failure of Title.**

Had demurrer been interposed the answer should have alleged a readiness to rescind the contract of sale; in the absence of a demurrer, the answer alleging the above facts was sufficient to support a judgment sustaining an injunction until the plaintiff should perform his promise touching the lien. (P. 255.)

ERROR to Court of Civil Appeals for Second District, in an appeal from Tarrant County.

Montgomery sued Brown to recover amount of a note given him for purchase money of land conveyed by deed with lien reserved, and to foreclose his vendor's lien therefor, to which the latter pleaded failure of consideration by reason of the existence of an outstanding incumbrance against the land. The trial court directed a verdict for the plaintiff and, defendant having appealed, the case was affirmed by the Court of Civil Appeals.

*Stanley, Spoonts & Meek*, for plaintiff in error.—The pleadings and evidence in this case present controverted questions of fact, which the court should have left solely to the ascertainment of the jury. Rev.

Stats., art. 1317; Rogers v. Broadnax, 24 Texas, 538; Kerr v. Hutchins, 46 Texas, 384; Patton v. Rucker, 29 Texas, 402; Supreme Council v. Anderson, 61 Texas, 301.

*Nugent & Essex,* for defendant in error.—The facts proven by the defendant constitute no defense to plaintiff's cause of action, because they show that he purchased with notice of the defects in plaintiff's title of which he now complains; and because the evidence does not show that the plaintiff, appellee, is insolvent, nor does it show that he did not have property in the State of Texas, subject to execution; and because the evidence does not show that defendant, appellant, did not rely on plaintiff's warranty; and because, according to the facts proven, the defendant is in possession of the premises and has not been evicted, and does not offer to rescind the sale, or in any manner do equity; and because defendant was not deceived by the representations of appellee. No fraud is proven. Tarlton v. Daily, 55 Texas, 92; Brock v. Southwick, 10 Texas, 65; Norris v. Ennis, 60 Texas, 83; Price v. Blount, 41 Texas, 472; Haralson v. Langford, 66 Texas, 111; May v. Rufus Ivie, Admr., 68 Texas, 379; Fagan v. McWhirter, 71 Texas, 567; Carson v. Kelley, 57 Texas, 380; Cooper v. Singleton, 19 Texas, 260.

DENMAN, ASSOCIATE JUSTICE.—R. E. Montgomery, a non-resident, sued G. A. Brown on two notes for four hundred dollars each, executed by the latter to the former as balance of purchase money for block 12 in Vernon, Texas, and to foreclose the vendor's lien reserved to secure same in the deed to said property from the former to the latter.

Brown, in a sworn plea, set up that at the time of the purchase of said land from Montgomery he had no opportunity to investigate the title and had no knowledge of same, but as Montgomery well knew was forced to rely upon the representations of the latter; that Montgomery then and there represented to him that he had a good and perfect title and a consecutive unbroken chain of transfer thereto from the sovereignty, each muniment thereof being properly registered in the records of Wilbarger County, and that said land was free of all incumbrances, mortgages or trust deeds, all of which was shown by Wilbarger County records as he (Montgomery) then believed, but that if there was any incumbrance whatever upon same, or if the records of said county showed any such incumbrance, he (Montgomery) agreed and promised Brown that before his said notes became due he would cause said incumbrance to be removed and cause a release thereof to be duly registered and recorded in said records; that he (Brown) believed said representations to be true, and relied upon said representations and agreement, and so believing and relying executed and delivered the notes sued on and received the deed to the land, all of which he would not have done but for said representations and promises, which promise and agreement to remove incumbrances and cause said records to show such removal was a part of the consideration of said notes; that said repre-

sentations were false and defendant was deceived thereby; that the records of said county at the time of said sale showed unreleased trust deeds on this and other lands, executed by the H. & T. C. Ry. Co. common source of title, to secure bonds aggregating several hundred thousand dollars, which defendant believes and charges are still valid liens on said property; that before he discovered said liens, relying upon plaintiff's representations he (Brown) made his home upon the same, placing permanent and valuable improvements thereon to the amount of five thousand dollars, the use and occupation not exceeding five hundred dollars, so that he cannot now rescind said sale without great loss and injury to himself; that said railroad is insolvent and Montgomery a non-resident; that he has often requested Montgomery to remove said incumbrances and cause said records to show same as he agreed to do, so that defendant, as he is willing and now offers, could pay said notes, but he has continually and now refuses so to do, whereby defendant has been greatly damaged, and if evicted he will be further damaged in the loss of his improvements in the sum of four thousand five hundred dollars; that by reason of Montgomery's failure to comply with the said agreements a cloud has been cast upon said title, thereby depreciating the value thereof to the amount of and to defendant's damage five thousand dollars; that the said consideration of said notes had failed,—and prayed that Montgomery be restrained from recovering thereon in this suit until he makes good his said representations and promises, whereupon defendant is ready and willing to pay, and he prays for his damages aforesaid and for general relief.

There was no exception to this plea.

The evidence showed that the Houston & Texas Central R. R. Co., common source of title, while owners of the property, executed and caused to be duly recorded in said county the trust deeds referred to in said plea securing the indebtedness therein mentioned, and there is no evidence tending to show that any of said indebtedness has been paid, but the evidence does show that no release thereof has been placed upon said records. The evidence showed a regular chain of transfer from the Houston & Texas Central R. R. Co. to Montgomery. Brown testified that at the time he bought the land from Montgomery he had no opportunity to examine the records, not being at the county seat, and that he had never examined the title and did not know of any incumbrance thereon; that at the time he asked Montgomery if he had a good and perfect title thereto, free from incumbrances, liens, etc., and if the same was shown by the records of Wilbarger County; that in response Montgomery stated that his title was perfect, and said "there was a mortgage or deed or trust lien on the land, or that the records showed there was such lien, —I do not now remember which,—and that he would obtain the release thereto and have the same spread upon the records of Wilbarger County before my note became due;" that he believed and relied upon said representations, etc., and thereupon closed the trade; that "the statements of plaintiff as to the record title and liens on said lands are untrue.

\*   \*   \*   The deed of trust records show existing and unsatisfied mortgages or deeds of trust thereon given by the Houston & Texas Central Railway Company before Montgomery purchased the land, to secure several hundred thousand dollars of indebtedness against said company;" that he did not learn of the defects in plaintiff's title to the land and of the liens thereon until the institution of this suit; that he improved the land before he learned of the same to the extent alleged in his plea; that the consideration paid by him was one hundred and fifty dollars cash and the notes sued on; that he requested Montgomery to perfect his title and cancel and remove the liens and cause releases to be recorded in said county and that thereupon he would pay the notes; that the Houston & Texas Central R. R. Co. is insolvent and in the hands of a receiver; that the land if free from incumbrance was worth the price paid, but that its cash market value in the condition the title is shown to be by the records of Wilbarger County at the time of trial, is nothing, and it could not be sold at all under such circumstances; and that he anticipated being evicted from the land, or that claim would be asserted to it by reason of the unsatisfied liens given by the Houston & Texas Central R. R. Co. aforesaid.  There was no testimony tending to contradict that of Brown.

The trial court instructed the jury to return a verdict for Montgomery for the full amount of the notes sued on, and, on the verdict so returned, rendered a personal judgment against Brown, and foreclosure of the vendor's lien on said block No. 12, for sale thereof and execution over for balance, which judgment having been affirmed by the Court of Civil Appeals, Brown has brought the same to this court by writ of error.

The question before us is, Did the court below err in instructing a verdict for plaintiff?

It is settled law in this State that in cases of this character a deed reserving a vendor's lien must be considered an executed contract.  May v. Taylor, 27 Texas, 125; Ogburn v. Whitlow, 80 Texas, 239.

In Cooper v. Singleton, 19 Texas, 267, in stating the circumstances under which a vendee in an executed contract can defend against a suit for purchase money, it is said, "The vendee should establish beyond doubt that the title was a failure in whole or in part; that there was danger of eviction; and also such circumstances as would prima facie repel the presumption that, at the time of the purchase, he knew and intended to run the risk of the defect."

The question there under discussion was the sufficiency of the plea to which a demurrer had been sustained, and this language was used with reference to the certainty required of the pleader in stating his defense in such a case.  It has no reference to the intensity of the proof required to support such plea.

While the burden is upon defendant to establish the material facts stated in such plea, he has never been held to establish them "beyond doubt."  It is sufficient if he establish same to the satisfaction of the court and jury as in other cases.

But it is contended that the evidence was not sufficient to authorize the submission of the case to the jury, and we will therefore examine the same to determine whether the jury could have rightfully found each essential element of the above rule in favor of defendant.

It is well settled that the existence of a prior mortgage constitutes a partial failure of title within the meaning of the rule, May v. Taylor, 27 Texas, 125. From the facts showing the execution and recording of the trust deeds in the county where the land lay, that there was no release of record, that by reason thereof the property was greatly depreciated, that Montgomery in violation of his agreement charged in the plea and shown by the uncontradicted evidence of Brown, failed to cause such releases to be placed of record and failed to offer on the trial any evidence of the satisfaction of said indebtedness charged and appearing prima facie to be still subsisting, the jury would have been authorized to find that said trust deeds constituted valid incumbrances on said block. Montgomery having agreed to clear off said liens and cause the releases to be placed of record before maturity of the notes, the circumstances above shown required an explanation from him, and his failure to make it was a proper matter for the consideration of the jury. If from the evidence the jury had concluded that so large a lien still existed, they would have been authorized to infer that the holder would insist upon its payment and that there was danger of eviction.

The evidence does not show how much other property was included in the trust deeds, but if such fact had been shown and it had been further shown that its real value largely exceeded the sums secured by the trust deeds, still the jury would have been authorized to adopt a practical instead of a theoretical view of the situation and conclude that there could not be found cash purchasers for so large an amount of property and that there was danger of eviction.

Montgomery, refusing to comply with his agreement to cause said lien to be released of record, is in no position to invoke the application of any harsh rule of law, if such there be, denying the jury the power to infer a fact known to all men reasonably conversant with the actual affairs of life, that in forced sales of property to pay so large a sum the selling price is practically within the control of the holder of the claim, and that great sacrifices are to be expected.

There can be no rule of equity requiring the vendee Brown, who is apparently without fault, to pay off or undertake to see that the other property sells for sufficient to satisfy such large sums, before he will be heard to stay the collection of the purchase money of the block in question until his vendor Montgomery complies with his express agreement. Upon the whole case we are of the opinion that the jury might properly have found "that there was danger of eviction."

This brings us to the consideration of the remaining question under said rule,—whether Brown at the time of the purchase "knew and intended to run the risk of the defect." It is not clear that at the time of the purchase Brown knew there was a lien on the land. He says Mont-

gomery told him "there was a mortgage or deed of trust lien on the land, or that the records showed there was. such a lien," and he again says he did not learn of the liens until after the institution of the suit. The jury might have inferred from this that the statement of Montgomery at the time of the sale was understood by Brown as referring to some satisfied incumbrance, which only required the entry upon the record of the formal release, and not as having any reference to the large incumbrances afterwards discovered. But however this may be, the evidence clearly rebuts any presumption that might have arisen from the purchase with knowledge of the lien, that Brown "intended to run the risk of the defect," for he exacted of Montgomery an agreement, not only that he would see any possible incumbrances discharged, but that he would cause the evidence thereof to be placed upon record in Wilbarger County before the maturity of the notes sued on herein. This is a lawful agreement, alleged and shown to have been so much a consideration for the notes sued on that, but for same, they would not have been executed. Montgomery has not attempted to show a compliance therewith nor any excuse for non-performance, but relies upon the proposition that the law affords Brown no remedy for his breach, but forces him to pay and run the risk of the defect and rely upon Montgomery's warranty, though the whole transaction clearly shows that he did not intend to do so when he exacted the express agreement. This proposition cannot be maintained under the facts of this case. May v. Taylor, 27 Texas, 125.

We are of opinion that the evidence would have authorized the jury to find such facts as would have entitled Brown to a stay of proceedings on the notes until Montgomery in some way satisfactory to a court of equity should have complied with his agreement to show the land free from incumbrances, and that the court erred in instructing a verdict for the latter.

Had there been a demurrer to the sufficiency of the plea on the ground that Brown did not offer to rescind upon condition that Montgomery would compensate him for his improvements, it may be that equity would have required such an offer, but in the absence of any intimation, by demurrer or otherwise, on the part of Montgomery, that he would have been willing to avail himself of such an offer, we are of the opinion that the pleading was sufficient to support a verdict and judgment sustaining the temporary stay of execution prayed for until Montgomery can perform his agreement. If it should be shown to be impossible for him to perform same Brown could not hold the land and retain the purchase money if Montgomery is willing to compensate him for his improvements. For the error above indicated the judgment is reversed and cause remanded.

*Reversed and remanded.*

February 20, 1896.

JUSTICE BROWN not sitting.