## W. O. EDWARDS ET AL. v. TRINITY & BRAZOS VALLEY RAILWAY COMPANY.

### Decided March 8, 1909.

**1.—Mistake—Contract—Equitable Relief.**

In order for a court of equity to relieve one from the obligation of a contract on account of mistake, it is essential that the fact concerning which the mistake is made must be material to the transaction, affecting its substance, and not merely its incidents; and the mistake itself must be so important that it determines the conduct of the mistaken party or parties.

**2.—Same—Negligence.**

The proposition that a mistake resulting from the complaining party's negligence will never be relieved, is not sound. It is more accurate to say that where the mistake is caused entirely by the want of that care and diligence in the transaction which should be used by every person of reasonable prudence and the absence of which would be the violation of a legal duty, a court of equity will not interpose its relief; but even then each instance of negligence must depend to a great extent upon its own circumstances.

**3.—Same.**

Where the mistake is solely due to the defendant but without his fault, equity will refuse specific performance only where the mistake is of a vital part of the contract—of the corpus of the agreement—and of such nature that the enforcement would be a great hardship; and the principle applies when the suit is for damages for failure to perform.

**4.—Same—Rescission of Contract—Unilateral Mistake.**

Where a contract in writing is executed under a mistake by only one of the parties as to a fact which is of the essence of the contract, the mistake constitutes a ground for a court of equity to rescind and cancel the apparent contract as written and place the parties in statu quo.

**5.—Same.**

Where the court is satisfied that the result which bears so hard upon the defendant, though legally a constituent part of the contract, was not intended by the parties at the time of the agreement—in fact, was not in contemplation as the effect of the agreement which was expressed in terms too unqualified—it will not specifically enforce the agreement; and the principle being that obligor is entitled to be relieved from the obligation of his contract, it applies when the suit is for damages for failure to perform.

**6.—Same—Case Stated.**

Where a contract by its terms conveyed to a railway company so much of the land, clay and gravel upon the land of the plaintiff as should be removed during five years, and bound it to remove and pay for at a stipulated price as much as 5000 cubic yards per month during the term; and it appeared that at the time the contract was made it was supposed by both parties that there existed a quantity of gravel, clay and sand suitable for the purpose of ballasting and filling the company's roadbed and so situated that it could be worked in the manner provided in the contract at a reasonable expense, not in excess of its value for such purpose; that the company contracted under the mistake as to the existence of material of the quality desired and so located and in such quantities that it could be removed at an expense not in excess of its value when removed, and that as the work progressed it was found that this condition did not exist, but that the material was so scattered and in such small quantities in each place as that it could not be removed except at a ruinous expense, the company was entitled in equity to be relieved of the obligation to perform the contract.

**7.—Same—Negligence.**

Where the gravel which the railway company undertook to remove and pay for was under the surface and not exposed to view, and only an actual working of the deposit would be likely to reveal the deficiency in either quantity or quality, the failure of the company to discover the deficiency was not such negligence as would close the door of equity to it in seeking to be relieved of the obligation of the contract.

**8.—Parol Evidence—Written Contract.**

Parol evidence tending to show that the gravel bed was undeveloped; that the quantity and quality and the situation of the gravel was undetermined; that it was contemplated by both parties that it should be removed in a certain manner and used for a certain purpose; that it was impossible to get it out except at an expense largely in excess of its value when removed; and that the obligor contracted under a mistake as to these matters, did not vary or contradict the terms of the written contract, and was admissible.

Appeal from the District Court of Grimes County. Tried below before Hon. Gordon Boone.

*Buffington, Buffington & Bowen,* for appellants.—Where a written contract is plain, clear and unambiguous in its terms, parol testimony is inadmissible to vary its terms by showing what one party to the contract may have understood was the intention of the other party before the contract was signed, aside from the terms of the contract itself. Soell v. Hadden, 85 Texas, 182; Greenhill v. Hunton, 69 S. W., 440; Ellis v. Cockran, 8 Texas Civ. App., 512; Railway Co. v.

Jones, 82 Texas, 156; McCauley v. Long, 61 Texas, 75, 80; Clack v. Wood, 37 S. W., 188.

Where the contract sued on contains no stipulation fixing the maximum or minimum cost of performance as a part of the consideration thereof or as a condition therein, parol testimony as to what was the cost of part performance is inadmissible to vary such contract, and is wholly irrelevant and immaterial. Railway Co. v. Jones, 82 Texas, 156; McCauley v. Long, 61 Texas, 75, 80; Railway Co. v. Griffith, 103 S. W., 226, opinion on rehearing.

The parties having entered into a written contract that is without ambiguity, it is error for the court to find what was the "main purpose" of one of the parties outside of the contract, and to ignore the mutual agreement as evidenced by the contract. Lynch v. Ortlieb, 70 Texas, 730; Clifton v. Montague, 40 W. Va., 207, 52 Am. St. Rep., 872; Foster v. Peyser, 9 Cush. (Mass.), 242, 57 Am. Dec., 43; Harlan v. Lehigh Coal Co., 35 Pa. St., 287; Clark v. Babcock, 23 Mich., 164; Ryley Wilson Grocer Co. v. Seymour Canning Co. (Mo.), 108 S. W., 630.

The minimum quantity of sand and gravel agreed under the contract to be taken by the railway company each month at the price named in the contract, fixed the measure of damages for a breach of the contract, and the railway company became liable for the full contract term. Where some of the findings of fact by the court are against the evidence and others without evidence, a conclusion of law based upon all such erroneous findings of fact is itself erroneous. Fessman v. Barnes, 108 S. W., 170; Campbell v. Howerton, 87 S. W., 370; Standard Oil Co. v. Denton, 70 S. W., 282; Lake Shore, etc., Ry. Co. v. Richards, 152 Ill., 59, 30 L. R. A., 33; McGavock v. Virginia, 86 S. W., 380; Fisher v. Milliken, 8 Pa. St., 111, 49 Am. Dec., 497; Masterton v. Brooklyn, 42 Am. Dec., 38, quoted in 30 L. R. A., 56.

*Andrews, Ball & Streetman* and *McDonald Meachum*, for appellee.

REESE, Associate Justice.—On April 17, 1906, appellants (styled contractors in the contract) and appellee entered into a written contract which is, omitting immaterial portions, as follows:

"Whereas, the contractors own a tract of land in the A. Zuber survey, located in Grimes County, Texas, upon which is located a deposit of gravel overlaid by deposits of sand and clay, and they hereby grant, bargain, sell and convey to said Trinity & Brazos Valley Railway Company, its successors and assigns, all of said gravel, sand and clay, or so much thereof as said railway company may remove therefrom during the existence of this contract, and upon the terms hereinafter stated. Said railway company to pay the contractors, grantors herein, one (1c.) cent per cubic yard for each yard of gravel, sand and clay removed from said land during the period of this contract, and to be paid as hereinafter provided for.

"The contractors hereby agree and contract to permit the said railway company to do such grading and to lay such tracks as will be necessary for said railway company to have to operate trains and

steam shovel plant for the purpose of removing said gravel, sand and clay.

"Said railway company to have the right of way through land of contractors, with right to grade said tracks as may be found necessary, and right to remove all such tracks on termination of said contract; said railway company to have the right to work the aforesaid gravel deposit at any time during the five years, ending April 1, 1911; that said railway company will begin operation and take possession of the aforementioned gravel pit and begin removing material therefrom within one year from the signing of this contract.

"Said railway company agrees to remove not less than five thousand (5000) cubic yards and gravel and sand per month, and further agrees that the price to be paid contractors is to be at rate of one (1c.) cent per cubic yard, but it is to be counted in carloads, none to be less than ten (10) cubic yards.

"Said railway company further agrees to make payments monthly, on or before the 20th day of each month, for gravel hauled during the previous month.

"To further identify this property upon which the gravel pit is located, there is hereto attached as exhibit 'A,' a blue print of the property owned by contractors, upon which is outlined the gravel deposit to be worked by the aforementioned railway company."

Under this contract appellee began operations in December, 1906, and took out gravel, sand and clay of the value under the contract of $150, and then ceased and abandoned the work. Whereupon, on September 21, 1907, appellant brought suit to recover on the contract, claiming as damages $2600 as the value, at the contract price, of the amount of gravel, sand and clay which, it is alleged, appellee was required to remove and pay for from December, 1906, when it began work, to April 17, 1911, the termination of the five years named in the contract. Appellants also prayed for general relief.

It was alleged that appellee had, in fact, removed and appropriated sand, gravel and clay of the value of $150 before abandoning the work, and that there was on the land a sufficient quantity of gravel, sand and clay to enable appellee to comply with its contract.

To this petition appellee pleaded a general denial, and specially answered, in substance, that it entered into said contract believing that there existed upon appellants' lands a gravel bed containing gravel, sand and clay in such quantity and suitable for use in filling and ballasting its roadbed as to be gotten out by building a spur-track thereto by the operation of a steam-shovel and train of cars. That appellants, as well as appellee, so believed, and that it was in contemplation of this fact that this contract was made, and it was well understood that the gravel was to be so removed, in such a way as that after payment of all expenses so incurred and paying the price for the gravel appellee could profitably use the same for the purposes aforesaid. That at the time the contract was made no gravel pit, mine or bed had ever been open on the land, and the amount of the gravel, its location, quality and situation were wholly undetermined, but it was supposed that it existed in such quantity and of

such quality that it could be profitably worked, and could be gotten out and removed by means of a steam-shovel.

It is averred that appellee, pursuant to the terms of said contract, at large expense built its railroad bed for some distance into or near said supposed gravel pit, and unloaded its iron rails and ties preparatory to building its track, and had endeavored in good faith to carry out its contract, but found that there was but small quantity of gravel on the land, and that not of suitable quality, and so located, being scattered about in pockets containing small quantities, that it was impossible to remove the same in the manner contemplated or in any other manner except at an expense greatly in excess of its value after such removal.

It was further alleged that, in fact, the gravel, sand and clay did not exist on the land in such quantity or of such quality or so located that it was possible for appellee to remove, as provided in the contract, and that both parties were mistaken as to the existence of the subject matter of the contract. Appellee alleged specially its own ignorance as to the matter, which it is alleged constituted the essence of the contract, and prayed that the contract be rescinded and appellee be relieved of its obligation, tendering back to the appellants a release of all said clay and gravel specified in the contract.

We have set out sufficient of the answer to disclose the general nature of the defense urged to the suit. Upon trial, without a jury, there was judgment for appellants for $150, the price of the gravel actually removed, from which they appeal.

Conclusions of fact and law were filed by the trial court. The trial court found the following facts, which are here adopted by us:

"1. The plaintiffs, W. O. Edwards, E. A. Edwards, M. E. Gooch, C. M. Gooch, C. E. Gooch and R. B. Gooch, on and prior to the 17th day of April, 1906, owned a tract of land described in the plaintiff's petition and in the agreement hereinafter set out, on which was located certain deposits of gravel, sand and clay, the quality and quantity of which was undetermined.

"2. On and prior to above date, the defendant, the Trinity & Brazos Valley Railway Company, was engaged in building, constructing and completing its roadbed for its main line of railway into and through Grimes County, Texas, and in the vicinity of the tract of land owned by plaintiffs, and for such purposes was desirious of obtaining suitable gravel and sand in sufficient quantities to be used profitably in ballasting and filling its said roadbed.

"3. The plaintiff, E. A. Edwards, on and prior to said date was the agent of the other parties plaintiff, and knew that said defendant was so engaged in building, constructing and completing its roadbed for its line of railway, and that defendant was desirious of obtaining gravel and sand of quality suitable for use in ballasting and filling in its said roadbed, and in quantities to be sufficient to be handled for such purposes at a reasonable expense, not in excess of its value for such purpose.

"4. On the said 17th day of April, 1906, the plaintiffs and defendant entered into the contract hereinbefore set out.

"5. At the time of the execution of the contract it was in the

contemplation of the parties thereto that the gravel and sand was desired by the defendant for use in ballasting and filling in its said roadbed, and that the same was to be so used, and that there existed on the tract of land owned by plaintiffs a quality of gravel and sand of quality suitable for such purpose, which could be worked by steam-shovel at a reasonable expense, not in excess of its value for such purpose.

"6.  On or about the first day of December, 1906, in pursuance of the foregoing agreement, the defendant built at a large expense a spur track for some distance into or near said alleged gravel pit, and removed therefrom a quantity of gravel, sand and clay from said premises, of the value of one hundred and fifty dollars ($150).

"7.  The defendant expended, in an attempt to develop the gravel pit, the amount of money shown in the statement of facts.  (About $3300.)

"8.  Defendant, after the execution of said contract, made investigation as to the quantity and quality of the gravel and sand upon the said premises and discovered that the quantity of the gravel and sand upon said premises was not sufficient to enable it to work the same by steam-shovel or in any other manner at a reasonable expense not in excess of its value for such purpose, and that the quality of same was not that required by defendant for the purpose of ballasting and filling in its roadbed, and that the defendant after making such discovery abandoned the same, and has since made no attempt to carry out the above agreement.

"9.  The purpose of the defendant in entering into the above agreement was to procure gravel which was suitable for ballasting and filling.

"10.  The gravel and sand upon said premises was not in sufficient quantity and not of such quality and not so situated that same could be used by defendant for the purposes contemplated at the time of the agreement, and could not be obtained in the manner contemplated by the agreement at a reasonable expense, not in excess of its value for such purpose."

We have set out sufficient of the answer to show that the defense urged by appellee to the action was a mistake on the part of both parties, or at least on the part of appellee, as to such material matter as constituted of the essence which authorized the rescission or cancellation of the contract upon such grounds.  Appellants insisted upon a compliance with the very letter of the contract, and resisted the introduction of parol evidence to explain in any manner whatever the circumstances under which the contract was executed, and to establish any of the facts upon which the defense rested.  These facts were, that the gravel bed was undeveloped; that the quantity and quality and situation on the land of the material was undetermined; the manner in which it was contemplated by both parties it was to be worked; the purposes for which it was understood by both parties it was desired; and the nonexistence on the ground of the material contracted for, or if it did exist, the fact that it was not suitable for the purpose for which it was intended and was so situated that it was impossible to get it out by the use of a steam shovel, or in

any other way, except at an expense largely in excess of its value when removed; together with the mistake of both parties, or at least of appellee, as to all of these matters. The introduction of this evidence was objected to on the ground, mainly, that the contract was plain and unambiguous in its terms, and parol evidence was inadmissible to vary or modify any of its terms, or to show what was intended by the parties. The first seven assignments of error present generally this proposition, which involves really the sufficiency of the facts set out in the answer as a defense to the suit.

Appellee did not seek by the evidence offered to contradict or vary the terms of the contract and such was not its effect, but to establish the existence of facts and circumstances which, in equity, relieved him of its obligations. Whether these facts and circumstances authorized such relief will be hereafter considered, and is a question distinct from the admissibility of the evidence. Our conclusion is that the evidence was admissible. (2 Pom. Eq. Juris., sec. 857 *et seq.*)

The answer of the witness E. A. Edwards, referred to in the first assignment of error, was distinctly favorable to appellants, and if it had been subject to the objection made the error did not prejudice them.

The evidence referred to in the second assignment was material as showing an effort in good faith on the part of appellee to comply with its contract. That it should have constructed the dump upon which to lay its rails to get to the gravel pit at a cost of $3300 tends to support their contention that they were only stopped in the further prosecution of the work by the practical impossibility of removing the gravel.

We have considered the assignments of error referred to and the several propositions thereunder, and we are of the opinion that all of the evidence objected to was properly admitted. Our reasons for this conclusion will appear from what is said in passing upon the objections to the conclusions of law of the trial court. If the court's conclusions are sound, it would necessarily follow that it was permissible for appellee to establish by parol the facts upon which such conclusions are formed, which were substantially the facts set out in appellee's answer.

By the eighth assignment of error appellants assail the finding of fact that the quantity and quality of the deposits of gravel, sand and clay were undetermined. The objection to this finding, that the evidence showed that examination and testing had been made and approved by appellee, is not sound. Although the evidence shows that some examination was made to ascertain the quantity and quality of the material, nevertheless it is conclusively shown that neither of the parties knew either the quantity of the material or its quality, and none of the examinations or tests made were such as to enable appellee to determine either the quality or quantity. It supposed the quantity to be sufficient and the quality suitable, but was mistaken in both.

It is sufficient to say with regard to the objections set out in the ninth, tenth, eleventh, twelfth and thirteenth assignments of error to

certain findings of fact of the trial court, that these findings are all abundantly supported by the evidence, and the assignments are without merit. We have concluded that the evidence upon which the findings are based was admissible. If we are correct in this, and such evidence sufficiently support the findings of the court, no objection can be properly made to the findings of fact. Whether such findings authorize or support the conclusions of law predicated upon them, is another question.

It is immaterial, as we view the case, whether the conclusion of law of the trial court in its definition of the contract "as a license based upon royalty," as set out in the fourteenth assignment of error, is corect or not. It is, we think, entirely profitless to split hairs over this question. The contract by its terms conveyed to appellee so much of the sand, clay and gravel upon the land as should be removed within five years after the date of the contract, and bound appellee to commence work within one year and to remove and pay for at the stipulated price as much as 5000 cubic yards per month from the time the work began to the end of the term. Upon the failure or refusal on the part of appellee to comply with the obligations of the contract it became liable to appellants for whatever damage they may have sustained by reason of such refusal, unless appellee showed that it was entitled, in equity and upon the grounds urged in its answer, to be relieved of the obligations of the contract. This is the substance. What name is given to the contract, whether license, lease or sale, is mere matter of form.

The trial court found as a conclusion of law, that "It having been in contemplation of the parties to the contract that the purpose of the defendant in entering into said contract was to obtain gravel and sand suitable for ballast and filling, and in quantities sufficient for such purpose, and to be worked by the method stipulated in said agreement, and at an expense such as would justify its use; and it having developed after the execution of said contract that the material of quantity and quality such as could be handled in the manner contemplated by the parties at a reasonable expense by defendant, did not exist upon said premises, the defendant was not compelled to operate said gravel, sand and clay, and had the right to surrender its rights under said contract; and there being no penalty provided for the failure to carry out the agreement by the defendant, and there being no proper measure of damages for such failure alleged and proven no damages accrue to plaintiffs by reason of defendant's abandonment of the agreement." This is assigned as error by the fifteenth assignment and presents the decisive question in the case. The latter part of the findings: "There being no penalty provided for the failure to carry out the agreement by the defendant, and there being no proper measure of damages alleged and proven, no damages accrue to plaintiffs by reason of defendant's abandonment of the agreement," was unnecessary and immaterial, in view of the conclusion that "the defendant was not compelled to operate said gravel, sand and clay, and had the right to surrender its rights under the contract." If this conclusion be correct, appellants were not entitled to damages. If it be not correct, then both upon the pleadings and

proof the proper measure of damages could have been applied, giving appellants compensation for the breach.

The question, however, is: Do the facts as pleaded and proven, as set out in the conclusions of fact, entitle appellee in equity to be relieved of the obligations of the contract? This question is one of much difficulty, and as to its proper solution we are in great doubt. None of the cases cited in the briefs afford us much assistance, and we have been forced to recur to general principles of equity for a guide. The difficulty, however, lies in determining whether the facts of the present case bring it within the principles of equity invoked by appellee.

We have approved the findings of facts of the trial court, in substance, that at the time the contract was entered into it was supposed by both parties that there existed on the tract of land a quantity of gravel, clay and sand of quality suitable for the purpose of ballasting and filling in appellee's roadbed, and so situated as that it could be worked by steam-shovel at a reasonable expense, not in excess of its value, for such purpose. · This was believed to be the condition. It was further found by the trial court that this condition did not in fact exist, and this finding, as we have concluded, is supported by the evidence.

We are inclined to the opinion that this was a mutual mistake of the parties as to a material matter, and if so, under well settled principles, would authorize a cancellation of the contract. But we do not rest our decision upon the ground of mutual mistake, but upon the mistake on the part of appellee as to the existence on the land of material of the quality desired, and so located, and in such quantities, that it could be removed at an expense not in excess of its value when removed. The trial court finds that the material in such quantity and of such quality as that it could be removed by steam-shovel, or in any other way, except at an expense in excess of its value after removal, did not exist on the land; that it was contemplated by the parties that it did so exist on the land, and that it was in contemplation of and in reliance upon this fact that the contract was made.

We make no excuse for quoting largely from Pomeroy on Equitable Jurisprudence and Equitable Remedies, for it is upon the principles of equity we find there stated we base our conclusions.

"There are two requisites essential to the exercise of the equitable jurisdiction in giving any relief defensive or affirmative. The fact concerning which the mistake is made must be material to the transaction, affecting its substance and not merely its incidents; and the mistake itself must be so important that it determines the conduct of the mistaken party or parties. If a mistake is made by one or both parties in reference to some fact which, though connected with the transaction, is merely incidental and not a part of the very subject matter or essential in any of its terms, or if the complaining party fails to show that his conduct was in reality determined by it, in either case mistake will not be ground for any relief affirmative or defensive. As a second requisite, it has sometimes been said in very general terms that a mistake resulting from the complaining

party's own negligence will never be relieved. This proposition is not sustained by the authorities. It would be more accurate to say that where the mistake is wholly caused by the want of that care and diligence in the transaction which should be used by every person of reasonable prudence, and the absence of which would be a violation of legal duty, a court of equity will not interpose its relief, but even with this more guarded mode of statement, each instance of negligence must depend to a great extent upon its own circumstances. It is not every negligence that will stay the hand ·of the court. The conclusion from the best authorities seems to be, that the neglect must amount to the violation of a positive legal duty. The highest possible care is not demanded. Even a clearly established negligence may not of itself be a sufficient ground for refusing relief if it appears that the other party has not been prejudiced thereby. In addition to the two foregoing requisites, it has been said that equity would never give any relief from a mistake if the party could by reasonable diligence have ascertained the real facts; nor where the means of information are open to both parties and no confidence is reposed; nor unless the other party was under some obligation to disclose the facts known to himself, and concealed them. A moment's reflection will clearly show that these rules can not possibly apply to all instances of mistake and furnish the· prerequisites for all species of relief. Their operation is, indeed, quite narrow; it is confined to the single relief of cancellations,· and even then it is restricted to certain special kinds of agreements." (2 Pom. Eq. Juris., 3d ed., sec. 856.)

"The most difficult cases are those where the mistake is due solely to the defendant, without negligence on his part, or inducement or advantage taken by the plaintiff. It is plain that not every material mistake in such a case will enable the defendant to avoid performance of the contract. The rule may be stated that where the mistake is solely due to the defendant but without his fault, equity will refuse specific performance only where the mistake is of a vital part of the contract—of the *corpus* of the agreement—and of such nature that enforcement would be a great hardship." (Id., sec. 783.)

"Where the court is' satisfied that the result which bears so hard upon the defendant, though legally a constituent part of the contract, was not intended by the parties at the time of the agreement—in fact, was not in contemplation as the effect of the agreement, which was expressed in terms too unqualified—it will not specifically enforce the agreement." (Id., sec. 791.)

"Where a contract in writing is executed under a mistake by ·only one of the parties as to a fact which is of the essence of the contract, the mistake constitutes a ground for a court of equity to rescind and cancel the apparent contract as written and place the parties in *statu quo*." (24 Am. & Eng. Ency. of Law, 618, and cases cited.)

If it had developed that in fact "gravel overlaid by a deposit of sand and clay" did not exist at all on the land, we think it could not be questioned that appellee should be held excused from the obligation to take it out and to pay for it, even if it had been guilty of negligence in failing to discover this fact before making the con-

tract. Or if it had been discovered that while some of the material existed, yet there was only a limited quantity and not as much as under the contract appellee was required to remove, it would have been entitled to be relieved of the obligation *pro tanto.* It could not be denied that this would have been a mistake as to the subject matter, going to the very essence of the contract. This might be placed on the ground of mutual mistake, or, if appellants knew of this non-existence of the subject matter of the contract, it would have been a fraud on their part to take advantage of appellee's ignorance as to such a matter. (Bishop on Contracts, sec. 588; 9 Cyc., 399.)

We think there can be no substantial difference, in the application of the principles referred to, between the nonexistence of the material and its existence on the land, in fact, but not in a gravel bed or beds as contemplated, but so scattered and in such quantities in each place as that it could not be removed except at a ruinous expense, so that appellee or any other person if compelled to pay for it would still prefer to let it remain as it is rather than attempt to appropriate it. Appellee at least, and we think appellants also, contracted with reference to a gravel bed where the material existed in such quantity as that it could be taken out with a steam-shovel, its track to be built into the deposit for that purpose. This seems to us to have been the subject matter of the contract and its very essence. Certainly, but for appellee's belief as to this it would not have made the contract, which really would amount to a gift to appellants of the amount stipulated to be paid. The trial court does not find that the material in sufficient quantity did not exist on the land, but it does find that if it does exist the conditions are such that it can not be utilized, and that if required to pay for it appellee would still leave it the property of appellants.

It can not be said that appellee was guilty of such negligence in failing to discover these facts as would close the door of equity to it in seeking to be relieved of the obligations of the contract. (2 Pom. Eq. Juris., 856, *supra.*) The gravel was under the surface and not exposed to view. Only an actual working of the deposit would be likely to reveal the deficiency in either quality or quantity.

So far as the application of the principles referred to is concerned, we can see no reasonable ground for making a distinction between a suit to compel specific performance in cases where that relief is sought and the present case. If in the present case it would be inequitable to compel appellee to remove and pay for the gravel, if no other obstacle existed to such relief, it would be, to the same extent, inequitable to require him to pay damages for failure to remove it. The fundamental principle is that appellee, for the reason stated, is entitled in equity to be relieved of the obligations to perform the contract.

We must not be understood as holding that a mere mistake on the part of appellee in the cost of removing the gravel, whether arising from miscalculation of such expense or from change in or failure to take into account any of the circumstances affecting such expense, would authorize the relief granted in this case. Such mistake would not, ordinarily, authorize rescission or cancellation of the contract,

For the reasons given we are inclined to agree with the conclusions of the trial court, and to hold that there is no error in the judgment. None of the assignments or propositions thereunder present ground for reversal, and they are severally overruled, and the judgment affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING.

Upon request of appellants on motion for rehearing we make the following additional findings of fact:

Before the contract was executed appellee, through some of its engineers, made some investigation of the premises with the view of determining the location and extent of the gravel beds on the land, and they made a blue-print map showing such location and extent which was attached to the contract and is part thereof. This blue-print shows the location and situation of the gravel bed with reference to appellee's line of railway. On July 12, 1907, W. E. Green, who was then vice-president and general manager of the company, wrote to appellant Edwards stating in substance that investigation had developed the fact that there was not to exceed 6000 yards of suitable gravel on the land that could be used for ballast, and that, such being the case, it would be a waste of money to undertake to put tracks in to get out that small amount of gravel. Edwards testified, and it is not contradicted, that after the receipt of this letter appellees took out some, he does not state how much, sand, gravel and clay. No point was made of this in any of the assignments of error.

The motion for other additional findings, and for rehearing, is overruled.

*Overruled.*

Writ of error refused.