ST. LOUIS SOUTHWESTERN RAILWAY COMPANY OF TEXAS V. PAUL A. JOHNSTON ET AL.

Decided January 22, 1910.

**Contract—Mutual Mistake of Fact.**

When a contract is based upon the belief by both parties that a certain fact exists, equity will cancel the contract and relieve the parties from liability for failure to perform when it is shown that the fact does not exist and the contract is therefore practically impossible of performance, and this though a certain amount is named in the contract as liquidated damages in case of breach.

Appeal from the District Court of Dallas County.   Tried below before Hon. E. B. Muse.

*E. B. Perkins, Dan'l Upthegrove* and *J. E. Gilbert,* for appellants. —When a contract provides that a given sum shall be paid as liquidated damages in the event of performance or nonperformance of the specific act in regard to which damages, in their nature uncertain, may rest in case of default, and no language is used indicating an intention that the sum stipulated shall be considered only as a penalty, such sum will be held to be liquidated damages.   Tobler v. Austin, 22 Texas Civ. App., 99; Collier v. Betterton, 87 Texas, 442; Eakin v. Scott, 70 Texas, 442; Durst v. Swift, 11 Texas, 142.

*Holloway & Holloway,* for appellees.

RAINEY, CHIEF JUSTICE.—At the instance of appellee, Johnston, the Stone Crushing Company was placed in the hands of a receiver, John Frost becoming the receiver.   During the pendency of such receivership the appellant intervened, seeking to recover damages for the breach by the Stone Crushing Company of a contract to furnish appellant a certain quantity of crushed stone.   Receiver Frost contested appellant's claim and upon a hearing Frost won and the railway company appeals.

It seems that one W. A. Smith owned a tract of land in Hopkins County, Texas, about four miles from appellant's road, on which land was a rock quarry.   Appellant's agents knew of this rock quarry, and, being desirous of securing rock with which to ballast its road, solicited bids for the furnishing of same.   Several parties investigated, but declined to engage in the enterprise.   Finally one Sinclair secured a lease of said land from W. A. Smith for the purpose of utilizing the rock for ballasting purposes and entered into a contract with appellant to furnish it a certain quantity of crushed rock for ballast.   In

order to carry out said contract Sinclair and associates incorporated under the name of the Sinclair-Weeks Co. and subsequently the name was changed by amendment to the Texas Stone Crushing Company, and virtually the same contract that existed with the prior company was entered into between the latter company and the appellant. The contract opens with this recital: "Whereas the said railway company desires·to ballast a large portion of its roadbed and track with rock, and there is a stone quarry and supply of rock near Sulphur Springs, Texas, near the track of said railway company, near mile post 513, which quarry is situated in Hopkins County, Texas, and the said quarry and rock are owned by W. A. Smith; and the said party of the second part has made an arrangement with the owner of said quarry and stone by which the party of the second part will, upon the payment of the consideration therefor, be able to secure sufficient rock for the purposes herein agreed, and there has been erected at said quarry a rock crushing plant, and the second party has become the owner of the said rock crushing plant so as to furnish rock to the said railway company in the quantities hereinafter agreed." The contract then stipulates as to the amount of rock to be furnished, the price to be paid and numerous other provisions in relation thereto, and among them, in effect, is that the damages that would accrue to the intervener by a breach of such contract and by a failure to furnish the rock for ballasting the intervener's railroad track would be difficult of ascertainment and that ten thousand dollars should be the fixed and liquidated sum as damages, although the bond for the faithful performance of the contract by said parties was in the sum of fifteen thousand dollars. The Texas Stone Crushing Company executed to appellant a bond in the sum of $15,000 conditioned upon the faithful performance of the contract.

At the time of entering into the contract, both appellant and appellee were under the impression that there was rock more than sufficient to fulfill the contract, but in this they were mistaken. The appellee entered upon the performance of the contract, but after complying in part discovered that there was not near enough rock to complete the contract and abandoned it. The appellant built a spur from its main track to the quarry, a distance of four miles, at an expense of about $12,000, believing that there was sufficient rock for appellee to comply with its contract.

The evidence shows that the contract was based on a fact assumed by both parties to the contract, that is, that there was sufficient rock in this particular quarry for the fulfillment of the contract. In this respect there was a mutual mistake which was material and renders the contract nonenforceable, as such assumed fact did not in fact exist.

In the opening paragraph of the contract it is assumed that the quarry contained "sufficient rock for the purposes herein agreed." W. E. Green, first vice-president and general manager of the railway company, and who acted for the railway company in making the contract, testified, in effect, that he thought there was plenty of rock for the purpose. Had looked over the quarry; had his engineer make a survey thereof, and had reached the conclusion stated. "I said, 'Mr. Morgan, I don't doubt that there is the quantity and quality of stone

in that quarry that is called for by our contract, but it is scattered and I don't want to see you get into this thing unless you know that you can get out the stuff.' The contract was prepared under my direction or that of my general attorney. I saw that it had in it that recital about the supply of rock. At that time, I believed that it was a correct statement of the facts, and as far as I know Mr. Morgan believed the same thing. I think I told Mr. Morgan that I was satisfied that there was sufficient rock there. I think I told him that the rock was there and the quantity enough, but the trouble was in getting it to the crusher."

John Sinclair testified: "Mr. Green told me that he had a deposit of stone near Sulphur Springs that he thought was a good proposition. He told me that there was no question in his mind but that there was plenty of stone there. I asked Mr. Eaton, the division engineer, if he had made an estimate of about how many yards of stone there was in the hill. He said, 'Yes. There is all the way from 500,000 to 700,000 yards.' At that time I thought this estimate correct."

Morgan testified: "I never inspected the amount of rock. I was going on Sinclair's and the engineer's statements. I did not measure it. We were anxious to get the thing started and get along so as to get stone for the company. At the time I made the contract I believed the things stated in the preamble were true about there being sufficient rock for the purposes of the contract. I did not estimate the amount of rock. I just took the engineer's estimate. It looked like there was plenty of rock there to enable us to finish that contract."

W. E. Green found the quarry, and after inspection thereof concluded it would be beneficial to his company to have it worked, and on the faith of there being sufficient rock to supply the amount contracted for he wrote to several parties to induce them to work the quarry, but they declined the proposition before the contract here was entered into, and so great was his faith that he caused a spur to be built at an expense of about $12,000 and incurred other expenses in order to procure rock sufficient to comply with the contract. The only doubt that he had in regard thereto was that the parties could not get it out.

In volume 9, Cyc., 399, the principle is stated that "where certain facts assumed by both parties are the basis of a contract, and it subsequently appears that such facts did not exist, there is no agreement."

In Edwards v. Trinity & B. V. Ry. Co., 54 Texas Civ. App., 334 (118 S. W., 572), where the contract was to furnish gravel, sand and clay for ballast of a railway from a certain tract of land, and it was found that the deposit of said material was so scattered in pockets that the cost of removal was more than the material was worth, and the contract breached, it was held that there was a mutual mistake of the parties as to a material matter that would authorize the cancellation of the contract. The following cases, as well as others, sustain the principle here announced. Blake v. Lobb, 68 N. W. (Mich.), 427; Fritzler v. Robinson, 31 N. W. (Iowa), 61; Muhlenberg v. Henning, 116 Pa. St., 138; Ontario v. Cutting, 134 Cal., 21;

Buchanan v. Layne (Mo. App.), 68 S. W., 952; Nordyke v. Kehlor (Mo. Sup.), 56 S. W., 287.

It is contended by appellant that by the terms of the contract the appellee bound himself to carry out the contract and stipulated therein to pay the sum of $10,000 as liquidated damages in case the contract was breached, the amount of damages being difficult of ascertainment. We do not believe the contract should be so construed. It should be construed in the light of the facts that existed at the time. The parties did not contemplate, at the time, that there was not sufficient rock on the land to meet the requirements, but assumed that there was sufficient rock on the land, and on that assumption the contract was based. In assuming that fact, both parties were mistaken, hence the breach provided for was one which might occur though the quantity of rock was sufficient to equal the amount specified in the contract. The nonexistence of the rock in sufficient amounts was not in the minds of the parties, therefore no binding agreement was entered into. There was no warranty that the rock existed, nor was there any stipulation to that effect in the contract. It would be inequitable to enforce such a contract, for it would be enforcing a contract that would never have been entered into had the true facts been known. Both parties lost by the transaction, and for the crushing company to be made to respond in damages under the facts seems to us clearly unjust. The judgment is affirmed.

*Affirmed.*

Writ of error refused.