## GREAT SOUTHERN SULPHUR CO. v. MILLS. (No. 1680.) *

(Court of Civil Appeals of Texas. El Paso. Nov. 26, 1924. Rehearing Denied Dec. 31, 1924.)

**1. Appeal and error ☜931(1)—All fact issues assumed resolved in appellee's favor, in absence of findings.**

In absence of findings by trial court, it must be assumed, on appeal from judgment for plaintiff, that all fact issues raised by evidence were resolved in his favor.

**2. Mines and minerals ☜6—Payment of purchase-money notes for executed conveyance of right and privilege under permits not defeated, because land did not contain minerals hoped for.**

Executed conveyance of every right and privilege of grantor under mineral permits granted is sufficient consideration for purchase-money notes, payment of which cannot be defeated, merely because it develops that land did not contain minerals which parties thought or hoped it did.

**3. Mines and minerals ☜6—Whether fraudulent representations as sulphur in land, covered by mineral permits, were made held fact issues for trial court.**

Whether alleged fraudulent representations that land, covered by mineral permits conveyed, contained sulphur of commercial quality in paying quantity, were made *held* issues of fact for trial court on conflicting evidence.

**4. Mines and minerals ☜6—Purchaser of mineral rights held not entitled to abatement in price for deficiency of acreage.**

Purchaser of mineral rights, without reference, in negotiation or consideration, to any designated or estimated acreage, which deed, importing sale in gross on its face, recited was 600, instead of 520 acres, by draftsman's error, *held* not entitled to abatement in purchase price for deficiency of acreage.

**5. Evidence ☜129(6)—Evidence of prior lease of mineral rights to subsequent grantee held admissible to rebut evidence of reliance on lessor's representations in purchasing them.**

In action on notes for purchase price of mineral permits, prior lease thereof by plaintiff to defendant *held* admissible to rebut latter's evidence of reliance on plaintiff's representations as to quantity and quality of sulphur in land in purchasing property.

**6. Appeal and error ☜1056(4)—Refusal to permit filing of reconveyance of mineral permits, purchased in alleged reliance on fraudulent representations, held harmless in view of finding against appellant on fraud.**

In action on notes for purchase price of mineral permits, refusal to permit defendant, alleging reliance on fraudulent representations in purchasing them, to file tendered deed reconveying them to plaintiff, *held* harmless, if error, where court, on sufficient evidence, found against defendant on such issue.

### On Rehearing.

**7. Mines and minerals ☜6—Contract for conveyance of mineral permits treated as executed in suit on purchase-money notes.**

For purposes of suit on notes for purchase price of mineral permits, purchased in alleged reliance on fraudulent representations by seller, contract of conveyance must be treated as executed.

Appeal from District Court, Culberson County; W. D. Howe, Judge.

Action by J. L. Mills against the Great Southern Sulphur Company. Judgment for plaintiff, and defendant appeals. Affirmed. See, also, 257 S. W. 573.

Jno. L. Dodson, of Van Horn, for appellant. M. V. Ward, of El Paso, for appellee.

HIGGINS, J. Appellee, Mills, brought this suit against appellant, Great Southern Sulphur Company, upon promissory notes given by the latter in part payment for 15 mineral permits conveyed by Mills to the appellant by deed dated September 22, 1920. The deed recites a consideration of $20,000 paid and to be paid as follows: $3,750 cash, $10,000 worth of lots of the Great Southern Sulphur Company, and the balance in notes. Some of the notes were paid, and, upon refusal to pay the remaining notes, this suit was brought to recover upon the same and to foreclose the vendor's lien reserved in the conveyance.

The deed is not copied in the statement of facts, but it appears that it conveyed permits thus described:

"Mineral permit No. 2635, heretofore issued by the general land office of the state of Texas and lying and being situated in the south ½ of the N. W. ¼ of section No. 10, in block 111, public school land, Culberson county, Tex., and containing 80 acres of land, more or less.

"Mineral permit No. 5551, heretofore issued by the general land office of the state of Texas, and known as a part of section No. 13, and part of section No. 24, in block No. 113, public school lands, Culberson county, Tex., and containing 119.1 acres of land, more or less.

"Mineral permits Nos. 2132, 2133, 2134, 2146, 2147, 2148, 2149, 2150, 2151, 2152, 2153, 2154, and 2155, covering the N. ½ of the N. W. ¼ and the N. E. ¼ of section 10, the S. W. ¼ and the N. ½ of the S. E. ¼ of section No. 11, and the N. W. ¼ of the S. W. ¼ of section 12, all in block 111, public school land, Culberson county, Tex., and containing 600 acres of land, more or less."

Defendant set up that it was induced to purchase the permits upon the false representation made to it by Mills, that the land covered by the same contained sulphur of commercial quality and in paying quantity, wherefore there was a failure of consideration for the notes; also that it was entitled to an abatement in the purchase price which

should be set off against the notes, because the last 13 described permits only contained 580 acres instead of 600 as stated in the deed. The defendant also filed a cross-action seeking to rescind upon the ground of fraud as indicated. Upon trial without a jury judgment was rendered in favor of Mills as prayed for, and against the defendant on its cross-action.

[1] The case upon its merits is essentially one of fact, and in the absence of findings by the trial court it must be assumed that all issues raised by the evidence were resolved in favor of the plaintiff. The undisputed evidence shows that the land covered by the permits did not contain sulphur of commercial quality in paying quantity.

[2] It is first in effect asserted that the undisputed evidence shows the fact just stated respecting sulphur, and therefore nothing of value was conveyed by the plaintiff to the defendant, and the consideration has therefore failed. By his conveyance the plaintiff conveyed to the defendant every right and privilege which he owned by virtue of the permits granted and this was a sufficient consideration for the notes. No authority goes to the extent of holding that the payment of purchase-money notes, given for an executed conveyance of mineral rights, can be defeated, simply because it develops that the land did not in fact contain the minerals which the parties thought or hoped that it did. The cases cited by appellant in this connection are upon an entirely different state of facts and have no application to the record here presented.

[3] The next proposition is that the undisputed evidence shows that defendant was induced to purchase the permits by the false and fraudulent representations concerning the presence of sulphur as pleaded.

The testimony of Warfield, appellant's secretary and treasurer, supports its contention that the representations were made by Mills, but it is flatly contradicted by the latter, who testified:

"As to my making representations to him that sulphur was on any of those claims in commercial quantities, I told him I didn't know; that I had only done assessment work, dug holes 4 by 5 by 10 feet, and that was not sufficient to say whether there was sulphur or not; I thought they were adjoining these other claims and between some of them, and therefore were valuable mining claims, and that was why I filed on them. At the time of this final deed Mr. Warfield asked me in Mr. Dodson's office if I had ever seen any sulphur on the claims, and at that time I told him I had not; we had never dug enough to ascertain."

Mills' testimony raises an issue of fact as to whether the representations were made, and it must be assumed that the court adopted Mills' version.

[4] With reference to the deficiency of the acreage, this too is controlled by the testimony of Mills, supported by other circumstances reflected by the record, to the effect that the discrepancy between the actual acreage of the last-described 13 permits and that recited in the deed was an error made by the draftsman of the deed at the time it was prepared. Except for the recitation as to the acreage, the deed upon its face imports to be a sale in gross. We are of the opinion that the evidence is sufficient to support the conclusion that, in fact, the sale was made without reference, in the negotiation or the consideration, to any designated or estimated acreage; that the reference in the deed to 600 acres was merely descriptive and the recitation that the acreage of the 13 sections was 600 instead of 520 was an error upon the part of the draftsman of the deed. Under these circumstances appellant was not entitled to any abatement in the purchase price. O'Connell v. Duke, 29 Tex. 300, 94 Am. Dec. 282.

[5] Error is assigned to the admission in evidence of a contract between the parties made March 10, 1920. By this contract Mills, as first party, leased the 15 permits to appellant, as second party. It contained these provisions:

"That the party of the second part shall have thirty (30) days from the date of this instrument to do certain prospecting work upon the property above described in order to determine whether or not sulphur and other minerals can be found in paying and commercial quantities, such prospecting work to consist of the digging of at least three (3) holes to a depth of not less than thirty-five (35) feet each, and such other holes as the said party of the second part may desire to dig upon any part of the property hereinbefore described. And if, at the expiration of said thirty (30) days, sulphur and other minerals are not found in paying and commercial quantities, then, and in that event, this contract and lease shall become null and void and of no further force and effect. And the only act or thing to be done by either party hereto shall consist of an affidavit, duly made and filed for record by the party of the first part, that said obligations hereinbefore stated were not done and performed by the said party of the second part, and if, at the expiration of said thirty (30) days, it is determined that sulphur and other minerals exist in paying quantities upon and in said property hereinbefore described, then, and in that event, the said party of the second part shall have the right to pursue this contract and lease for a term of one year from date of this instrument, and that during said period said party of the second part agree to take out at least five thousand (5,000) tons of ore from said land hereinbefore described, and to pay said party of the first part the sum of one and no/100 ($1.00) dollars per ton for each of said five thousand (5,000) tons, free of expense to the said party of the first part, and that the said party of the second part shall have the right to take from said land hereinbefore described within the said period of one year from the date hereof as much ore in excess of said five thousand (5,000) tons as it may see proper so to take, but shall

pay to the said party of the first part the sum of one and no/100 ($1.00) dollars per ton for each ton in excess of said five thousand (5,000) tons so taken out. It is further agreed and understood by and between the parties hereto that the first of said five thousand (5,000) tons, if taken at all, shall be taken as follows: The first fifteen hundred (1,500) tons to be taken out and paid for as hereinbefore indicated within the first four (4) months of this contract and lease."

The admission of this evidence was objected to upon the ground "that all prior agreement or agreements to lease said property were merged into the deed of September 22, 1920." This matter presents no error. It was admissible to rebut the evidence of the defendant that in purchasing the property it relied upon the representations of Mills.

[6] Upon the trial the court refused defendant permission to file a deed which it tendered, reconveying all of the permits to the plaintiff. The error, if any, in this matter is harmless, because upon the merits of the case the court found against the defendant, and the evidence supports his findings and judgment.

Affirmed.

## On Rehearing.

[7] Appellant errs in assuming that the conveyance to it by Mills was "wholly executory." It was not by inadvertence that we treated it as an executed contract. It is well settled that, for the purposes of this case, the contract of conveyance is to be treated as executed. May v. Taylor, 27 Tex. 125; Brown v. Montgomery, 89 Tex. 250, 34 S. W. 443; Ogburn v. Whitlow, 80 Tex. 239, 15 S. W. 807; Carey v. Starr, 93 Tex. 508, 56 S. W. 324.

Appellant earnestly insists that the following cases are decisive in its favor in view of the undisputed evidence that the land did not contain sulphur of commercial quality in paying quantity, viz.: Edwards et al. v. T. & B. Ry. Co., 54 Tex. Civ. App. 334, 118 S. W. 572; St. L. S. W. Ry. Co. v. Johnston, 58 Tex. Civ. App. 639, 125 S. W. 61; Crayton v. Munger, 9 Tex. 285; Carson v. Taylor (Tex. Civ. App.) 238 S. W. 261.

In Crayton v. Munger the suit was upon a note given in payment for land. The defendant answered and sought to rescind on account of fraud. Exceptions to the answer were sustained. This was held to be error. Upon demurrer the truth of the allegations are taken as confessed. Carson v. Taylor was also an action to rescind and recover back money paid on account of fraud. The issue of fraud was found in favor of the party asserting it. We fail to see how those two cases can be regarded as controlling in this action, where the issue of fraud has been found by the trial court against the one asserting it, and the evidence sustains the finding.

Edwards v. Ry. and Ry. v. Johnston were suits to recover damages for the breach of executory contracts. The evidence disclosed a mistake as to the subject-matter of the contracts rendering them impossible of performance, or if possible, under the circumstances it would be inequitable to enforce the same. It seems to us that the distinguishing features of these cases from the present suit are so apparent that there is no room for argument.

In the main opinion it was said:

"The next proposition is that the undisputed evidence shows that defendant was induced to purchase the permits by the false and fraudulent representations concerning the presence of sulphur as pleaded."

Appellant says in its motion that this is an incorrect statement of its proposition, which in fact was:

"The evidence showed conclusively that the plaintiff did falsely and fraudulently represent to the defendant," etc.

The opinion is corrected accordingly. The opinion quotes the evidence in support of the finding that Mills did not make the representations as alleged. It speaks for itself as to its sufficiency to support the assumed finding of the trial court.

With respect to the ruling upon the deficiency in acreage, appellant says O'Connell v. Duke, 29 Tex. 300, 94 Am. Dec. 282, which was cited in support of the ruling, does not support the same; that the ruling is contrary to the law announced in O'Connell v. Duke. In that case our Supreme Court gave its unqualified approval to what was said by the Supreme Court of Kentucky in Harrison v. Talbot, 2 Dana, 258, and the rule then adopted has prevailed in this state ever since.

It was said:

"Sales in gross may be subdivided into various subordinate classifications: First, sales strictly and essentially by the tract, without reference, in the negotiation or in the consideration, to any estimated or designated quantity of acres. Second, sales of the like kind, in which, though a supposed quantity by estimation is mentioned or referred to in the contract, the reference was made only for the purpose of description, and under such circumstances, or in such a manner as to show that the parties intended to risk the contingency of quantity, whatever it might be, or how muchsoever it might exceed, or fall short of, that which was mentioned in the contract. * * * Contracts belonging to either of the two first-mentioned classes, whether executed or executory, should not be modified by the chancellor when there has been no fraud."

The evidence is sufficient in this case to show a sale in gross of the second classification without fraud or mistake as to the correct acreage, and in our opinion our holding is completely in accord with the rule adopted in O'Connell v. Duke.

The earnest insistence of appellant's coun-

sel and his sincerity in the merits of his appeal merit a careful consideration of the motion for rehearing. This has been accorded, but we see no occasion to change our ruling.

The motion is overruled.