**Clarence DUMAS, Plaintiff in Error,**

v.

**Rachel P. CONYER, Clerk-Treasurer of City of Purcell, Homer Boudreau, Sr., Plumbing, Electrical and Building Inspector of the City of Purcell; Lawrence Mantooth, Bill Williams, Mike Tinsley, Jerry Yoakum, and Jimmy Walker, as Commissioners and Members of the Board of Health of the City of Purcell, Defendants in Error.**

**No. 41771.**

Supreme Court of Oklahoma.

Nov. 26, 1968.

Rehearing Denied Jan. 14, 1969.

Bailey & Whitlock, Norman, for plaintiff in error.

Norman A. Smith, Purcell, for defendants in error.

LAVENDER, Justice.

Plaintiff in error, as the owner of "Lots 7–11, inclusive, of Dumas Replat of Original Block 40, City of Purcell, Oklahoma," commenced a district court proceeding for a writ of mandamus to compel the defendants in error, as the persons holding certain positions with the City of Purcell, to connect, or permit him to connect, the water, sewer, and electric lines constructed and installed by him on said property to the city-owned and operated water, sewer, and electric utility systems adjacent to said property, and to furnish water, sewer, and electric services to the property.

He alleged, among other things, that he had improved the described land by the construction and installation of water, sewer, and electrical lines upon the property, and otherwise expended substantial money and time in rendering the property suitable to accommodate five mobile homes; that the property is zoned "U–1" under the zoning ordinances of the City of Purcell, for single family dwelling use, and that his proposed use of the property is not violative of said zoning ordinance; that he applied for, and tendered the required deposit and inspection fees, for water, sewer, and electrical service to the property; that the members of the City Commission of the City of Purcell, sitting ex officio under the city charter as the City Board of Health, declared this property and the improvements thereon a nuisance, when in truth and in fact it is not a nuisance, and resolved that no water, sewer, or electrical services should be furnished to the property, and directed the city's building and electrical inspector accordingly; that, later, the same individuals, sitting as the City Commission of the City of Purcell, confirmed that action and directive of the board of health; that in so doing those individuals acted arbitrarily and capriciously and without just cause or reason; that the defendants refuse to furnish said utility services to the property; that the City Clerk-Treasurer refuses to issue the required connection permits and licenses or to accept and retain the required fees and deposits therefor; that the City Plumbing, Building and Electrical Inspector refuses to make the required inspections or to authorize and supervise the connection of said utilities; that the City Commission and City Board of Health refuse to require or permit their appointed officials, the City Clerk-Treasurer and the City Plumbing, Building and Electrical Inspector, to perform their legal duties with respect to the plaintiff's application.

The trial court issued an alternative writ of mandamus which recited, among other allegations of the petition, the plaintiff's contemplated use of the described property as a "Mobile Homes Park," and commanded the defendants, immediately upon receipt of the writ, to perform their duties under the ordinances of the City of Purcell to provide, or permit to be supplied, municipal water, sewer, and electrical services to said property—specifically, that the City Clerk-Treasurer receive and retain the required deposits and fees and issue the required receipts, licenses and permits, and that the City Plumbing, Building and Electrical Inspector perform the required inspections and supervise the required connections of said utilities according to the city ordinances, and that the City Commission and City Board of Health direct their appointed officers and employees to make said collections, inspections and connections and provide said utility services to the property—or appear before the court, at a stated time on a specified date, and show cause for their failure or refusal so to do.

The defendant city officials filed a return and answer to the alternative writ in which they alleged, among many other things, that the plaintiff's proposed use of the property in question as a "Mobile Homes Park," in a "U–1" zoning district would be in contravention of the city's zoning ordinance.

A trial was had on the date specified in the alternative writ of mandamus. At the close of the trial, the parties stipulated that the only question for determination by the court was the question of law of whether the zoning ordinance of the City of Purcell would permit the placing, and use, of mobile homes, as contemplated by the plaintiff, in a "U–1" zoning district. Tacitly, at least, the parties thereby agreed that the writ of mandamus prayed for by the plaintiff should be granted if that question be answered in the affirmative, but should be denied if that question be answered in the negative. The trial court entered its order and judgment denying the writ of mandamus prayed for by the plaintiff, based upon a finding that,

in the circumstances, the plaintiff's proposed use of the property in question would constitute a "commercial" use thereof, which is not authorized, or permitted, in a "U–1" zoning district. For that reason, we shall consider only the question presented to the trial court, and the evidence bearing thereon.

By stipulation of the parties, a copy of the zoning ordinance of the City of Purcell, together with copies of the city charter and ordinance provisions concerning the members of the City Commission being, ex officio, members of the City Board of Health with all of the voting power, and the duties and powers of that board. It was also stipulated by the parties that, on a specified date, the City Board of Health declared the property of the plaintiff a nuisance and directed the City Plumbing, Building and Electrical Inspector not to connect the property to the city's utility services; that, three days later, the City Commission in meeting thereof confirmed that action of the City Board of Health and directed the City Plumbing, Building and Electrical Inspector to notify the plaintiff of such actions and directions; that the city's water, sewer, and electric utility lines are adjacent to the plaintiff's property as alleged in his petition; and that, at all times relevant to the action, the plaintiff's property was, and presently is, zoned "U–1."

In support of the defendants' return and answer to the alternative writ of mandamus, the City Manager of the City of Purcell testified that the reason why he had not directed that the utilities be provided to the plaintiff's property was that the City Council met as the Board of Health and declared "this issue now involved" a nuisance, and that that ruling was still in effect.

Plaintiff testified that each one of his five lots measures 75 feet in width by 160 feet in depth (which would give an area of 12,000 square feet), and concerning his proposed use of the property in question (which would have an area of 60,000 square feet), he testified that he proposed to use the property as a "mobile homes park," by using each of his five lots as the site for one mobile home which would be restricted to occupancy by one family and would be so located on the lot as to meet, or exceed, all requirements of the city ordinances, but did not propose to construct any "public" facilities, such as a swimming pool, laundry, bath house, or toilets, on the property in question; and that he did not propose to install any mobile homes on the property himself but proposed to rent the spaces to other people who owned their own mobile homes, and they could move their mobile homes in and out as they desired. He did not so state, but the inference is that facilities would be, or had been, provided for connecting each mobile home to the water, sewer, and electrical lines installed by the plaintiff on the property in question.

Plaintiff also testified that after talking with the then City Manager of the City of Purcell about his proposed use of the property and being encouraged by the City Manager to go ahead with the project because it would provide needed utility revenues for the city, he installed water and sewer lines and electric lines and poles on the property at a cost of about $1,200.-00; that he then applied to the city for water, sewer, and electrical service for the property and tendered all required fees and deposits; and that some time later he received a letter from the City Inspector notifying him of the above-mentioned actions of the City Board of Health and City Commission.

On cross-examination, the plaintiff testified that prior to bringing this action he had applied to the city to have the property changed from "U–1" (one family dwelling) zoning classification to "U–3" (general commercial) zoning classification; that the City Planning Commission approved the change but the City Commission turned it down; that he did not attempt to appeal from that action of the City Commission; and that his present action does not involve

a request for a change in the zoning classification of the property.

There is nothing in the evidence or stipulations which would indicate that the plaintiff has applied, or intends to apply, for the building permit or permits which apparently would be required, under the zoning ordinance, before constructing any building or structure on the property or moving any building or structure onto the property.

The zoning ordinance of the City of Purcell provides, in Section 11 thereof, that it shall be enforced by a building inspector appointed by the City Manager; that no land or "structure" shall be changed in use and no "structure" shall be erected, altered or moved until the Inspector has issued a building permit certifying that the plans and intended use of the land, "buildings" and "structures" are in conformity with the ordinance; and that, in filing application for a building permit, the applicant shall submit: (a) a plat drawn to scale, showing the actual shape and dimensions of the "lot" to be built upon, the actual size and location on the "lot" of existing "buildings" and "structures," and the lines within which the proposed "building" or "structure" shall be erected or altered, the existing and intended use of each "building" or part of a "building," the number of families or housekeeping units the "building" is designed to accommodate, the proposed location and type of water supply and sewage disposal facilities, and such information with regard to the "lot" and neighborhood "lots" and their use as may be necessary to determine and provide for the enforcement of the ordinance; and (b) a certificate of approval from the County Health Officer of the proposed methods of water supply and disposal of sanitary wastes (with a proviso that the use of the city water and sanitary sewer systems shall be considered as satisfying this last-mentioned requirement).

The term "lot," as used in the ordinance, is defined in Section 18 thereof as meaning:

"Any plot of land occupied or intended to be occupied by one building, or a group of buildings, and its accessory buildings and uses, including such open spaces as required by this ordinance and other laws and ordinances, and having its principal frontage on a street."

The term "building" is defined in the ordinance as meaning "Any structure. * * ;" and the term "structure" is defined as meaning "Anything constructed or erected, the use of which requires permanent location on the ground or [being] attached to something having a permanent location on the ground, * * *."

Under the zoning ordinance of the City of Purcell, the city is divided into five types of zoning districts, designated as "U–1 One-family District," "U–2 Multiple Family District," "U–3 General Commercial District," "U–4 Light Industry District," and "U–5 Heavy Industry District," and, in each zone, "land and structures" may be used only for the purposes specified in the zoning schedule. Under that schedule, in a "U–1 Single Family Residential District," the "permitted" uses are:

"detached one-family dwellings; church; school offering general education courses; library; general purpose farm; garden; nursery; private club not conducted for profit; municipal recreation or water supply use; accessory use;"

and "special permit" uses (for which a special permit must be obtained from the City Planning Commission by the procedure provided in the ordinance) are:

"cemetery; golf course; hospital; convalescent home; sanitarium; institutional; philantropic use; municipal use; public utility; provided all structures incidental to those uses are located 25 feet from any property lines;"

and the "prohibited" uses are "All uses not specifically permitted therein."

A "dwelling" is defined in the ordinance as "Any building, or portion thereof, which is designed for use for residential purposes;" and a "single-family dwelling" is

defined as "A building designed to be occupied by one family."

Plaintiff's basic theory herein is that, except for the ease with which mobile homes may be moved from one place to another, there is no real difference between a mobile home and any other building of the same dimensions with the same accommodations, and, under the zoning ordinance of the City of Purcell, a mobile home designed to be occupied by one family is a "one-family dwelling" which may properly be located in a "U–1" zoning district.

While it is possible that, just as a general proposition, a mobile home which is designed for occupancy by one family, if connected to water and sewer lines in the ground in such a way that it could be said to be "attached" to something having a permanent location in the ground, might constitute a "single family dwelling" or "one-family dwelling" within the meaning of those terms as used in the zoning ordinance of the City of Purcell, that is not all that is involved in this case. And, although it might be possible for the plaintiff to locate on the "lot" (plot of land) involved herein as many as five mobile homes in such a way as to meet all of the "space" requirements of this zoning ordinance (including the required minimum total area of 6,000 square feet for each "single-family dwelling" or "one family dwelling" on the "lot" involved) and connect each one of them to his water and sewer lines on the "lot" in such a way that he would be entitled to a building permit or permits from the city, upon proper application therefor, even though he proposed to rent all of such mobile homes to others, that is not what is involved herein. This plaintiff proposes to utilize this "lot" by renting specified portions of the "lot" (the land) without any mobile home thereon, to other people owning their own mobile homes, and allowing such other persons to park their mobile homes thereon and use the water, sewer, and electrical facilities which he has installed in and on the "lot."

Although no specific mention of "trailer or tourist courts" is made in the schedule of zones, in connection with the use of land and buildings in any such zones, Section 9 of this zoning ordinance provides that:

"Cabins and trailers in any trailer or tourist court together with any accessory buildings or structures already on the lot, shall not occupy in the aggregate more than fifty (50) percent of the lot area, and each lot used for a tourist or trailer court shall contain not less than twelve hundred (1,200) square feet of area for each cabin, trailer or tent."

The term "trailer court," as used in the zoning ordinance, means:

"Land or property which is used or intended to be used or rented for occupancy by two (2) or more trailers or movable dwellings, rooms, or sleeping quarters of any kind."

■ We think it is clear that, under the plaintiff's own testimony, he intends to use the "lot" (plot) involved herein as a "trailer court," within the meaning of that term as used in the zoning ordinance in question. Such a use of land in a "U–1" zoning district is not specifically permitted by this zoning ordinance (even with a special permit therefor) and, therefore, under the provisions of the ordinance, is prohibited thereby. As we see it, it is immaterial whether such a use would fall within the "U–3" (general commercial) category or in some other zoning category. It is not specifically permitted in a "U–1" zoning district and, therefore, is prohibited in a "U–1" zoning district.

■ Plaintiff attempts to attack the judgment of the trial court on several legal theories which not only are not involved in the question which the parties stipulated, in the trial court, was the only question presented to that court, but none of such theories was presented by the pleadings. Therefore, this court will not consider those

**840**

questions. Secrest v. Williams (1939), 185 Okl. 449, 94 P.2d 252; Midwest City v. Eckroat (1963), Okl., 387 P.2d 123.

■ In an action of equitable cognizance, this court will examine the whole record and weigh the evidence and affirm the judgment of the trial court unless clearly against the weight of the evidence or contrary to law or established principles of equity. Murdock v. Loeffelholz (1966), Okl., 421 P.2d 236.

In the present case, the trial court answered in the negative the question that the parties stipulated was the only question presented for determination, and rendered judgment accordingly. Its judgment on the single question presented is not clearly against the weight of the evidence or contrary to law or established principles of equity.

Judgment affirmed.

JACKSON, C. J., IRWIN, V. C. J., DAVISON, WILLIAMS, BLACKBIRD, HODGES and McINERNEY, JJ., concur.

BERRY, J., concurs in result.