**MOBIL OIL CORPORATION, Appellee,**

v.

**FLAG–REDFERN OIL COMPANY, formerly Flag Oil Corporation of Delaware, Appellant.**

**No. 45048.**

Court of Appeals of Oklahoma, Division No. 1.

May 1, 1973.

Rehearing Denied July 17, 1973.

Certiorari Denied May 7, 1974.

Approved for Publication by the Supreme Court May 9, 1974.

S. M. Groom, Jr., Oklahoma City, for appellee.

Bratton, Allford & Ashmore, McAlester, for appellant.

BOX, Judge:

An appeal from the District Court of Latimer County, Oklahoma by Defendant (Appellant) from a judgment for Plaintiff (Appellee), canceling oil and gas releases.

Action was commenced by plaintiff on July 12, 1966, seeking to cancel releases of two oil and gas leases executed and recorded by plaintiff on the grounds of mistake, failure of consideration, and non-delivery, and quieting title to same in plaintiff. The original petition named Flag-Redfern Oil Company formerly Flag Oil Corporation of Delaware and John J. Redfern, Jr. individually. Individual defendant Redfern answered, admitting that he was a stockholder in Flag Oil and denying any individual interest in the purported leases. Defendant Flag Oil answered, admitting that it was the owner of an undivided mineral interest in the property involved, denying that said mineral interest was subject to the oil and gas leases set out in plaintiff's petition by reason of the release of same; further alleging said releases were delivered and recorded, and denying that there was any mutual mistake in the execution and delivery of said leases.

At pre-trial conference the action against the individual defendant John J. Redfern, Jr. was dismissed. The first trial was to the court on July 8, 1969, the court rendering judgment for defendant Flag-Redfern Oil Company refusing to cancel the executed releases on the grounds that the releases were executed solely through the negligence of plaintiff. Motions for new trial were filed by both parties and the court granted the motions for new trial, over the objection of defendant. Defendant did not file its petition in error but later filed a Petition for Certiorari to review certified interlocutory order, which was denied by the Supreme Court. Thereafter, the original trial judge filed a certificate of disqualification, and the case was tried a second time before Judge George Windham, who rendered judgment in favor of plaintiff and against defendant.

From the overruling of defendant's Motion for a New Trial this appeal was perfected.

Briefly the evidence reveals the following: The oil and gas leases covered lands in Section 6, Township 6 North, Range 19 East, Latimer County, Oklahoma. On May 22, 1961, Republic Natural Gas Company purchased two oil and gas leases from Panhandle Cooperative Royalty Company and Flag Oil Corporation of Delaware. One of these leases covered the lands in the NE¼ of Section 6 and the other lease covered lands in the NW¼ of Section 6. The primary terms

of the leases expired on May 22, 1966. In 1961, Mobil purchased the assets of Republic Natural Gas Company and thus acquired ownership of the two leases which are the subject of this action. In February of 1966, prior to the expiration of the primary terms of the leases, expiration notices were circulated within the Mobil Oklahoma City District Office for action to be taken, i. e., whether the leases should be drilled, renewed, or allowed to expire. A decision was made then to renew the leases at a maximum price of $50.00 per acre before expiration. Before efforts to renew were made, the District Office obtained approval to drill a well in Section 6. On May 14, 1966, within the primary term of the two leases, Mobil commenced the drilling of its Dovie Weaver Unit No. 1 well located in the SW¼ NE¼ of Section 6-6N-19E. (On May 10, 1966, the Oklahoma Corporation Commission designated Section 6 as a well drilling and spacing unit for production of gas from the Basal Atoka, Cromwell and Middle Atoka formations.)

After the forwarding of the expiration notices to Mobil's Denver office, the internal organization of Mobil Oil Corporation was changed, and on April 1, 1966, the Oklahoma City District Office became a Division Office. It then had the authority, and the responsibility, to execute releases and handle the expiration notices which had previously been handled by the Denver Division Office. The approval to drill the well and the commencement of drilling should have caused the expiration notices to have been voided or pulled. By mistake, the expiration notices were not pulled from the lease files after the commencement of the well, and in June, 1966, after the expiration of the primary terms, the expiration notices were processed for preparation of the releases. Through mistake, the releases were not checked by the senior lease clerk against the drilling locations and the releases were executed and recorded. The releases were recorded on June 30, 1966, and before the recorded instruments were returned by the County Clerk to Mobil's Oklahoma City office, Mobil discovered its error and contacted both Panhandle Cooperative Royalty Company and Flag Oil Corporation, the lessors under the leases, and requested help in correcting the mistake. Panhandle ratified the oil and gas leases; Flag did not join in the ratification. On July 5, 1966, the first working day after the recording of the releases on June 30, Mobil contacted Flag and requested that Flag join the ratification and canceling of the releases. The request was repeated on July 7. On July 8, 1966, Flag Oil Corporation refused plaintiff's request to recognize that the releases were executed through mistake, and contended that the release of the oil and gas leases remained valid notwithstanding the erroneous releases. On July 8, Mobil Oil Corporation filed notices in the records of Latimer County that each of the releases of the oil and gas leases was executed through clerical error and that the releases were void and without consideration.

We believe the following testimony best illustrates the evidence of plaintiff:

"Q. Is there any explanation for what happened as far as you're concerned?

A. No we just—just made a mistake —just goofed.

Q. Excuse me, I'm sorry, I went too fast, is there any explanation for what happened here in the execution of the releases of these two oil and gas leases?

A. None other than we made a mistake."

Likewise, the following testimony best reflects the evidence produced by defendant:

"Q. Mr. Redfern, on page 15 at the bottom of the page, Mr. Puumala was asked this question and gave this answer, 'Does the land-owner have to in fact request releases to clear his land of oil and gas leases

of record', and the answer is, 'yes, they do request them'. Mr. Redfern, did you ever request that this oil and gas lease be released, these two oil and gas leases be released?

A. No sir, the company never requested that Mobil Oil Corporation release either of the two leases that are subject to this lawsuit.

\* \* \* \* \* \*

Q. Mr. Redfern, Mr. Grayson Ray, in his deposition, testified as follows, question,—the question is on page 20 Mr. Groom.

THE COURT:

What page Mr. Bratton?

MR. BRATTON:

Q. Twenty. 'So you talked to Mr. Redfern directly about the execution ratification', answer, 'Both on the telephone and in my office'. Question, 'he came to see you', answer, 'yes', question, 'and what was the nature of that conversation', answer, he told me that he was not interested in ratifying the lease unless we would double the royalty'. First, Mr. Redfern, did you discuss a lease ratification with Mr. Grayson Ray in his office?

A. No sir.

Q. Did you discuss ratification with Mr. Ray over the telephone?

A. Yes sir.

Q. Do you recall the date?

A. Yes, on June, pardon me, July 11, 1966, in the morning, Mr. Ray called me to discuss the fact that we had written them on the 8th and at that time I reiterated to him our company policy, that was, that we would not execute a ratification or issue a new—ratifications, or issue two new leases without a valuable consideration, that is company policy."

Defendant alleges as error the following:

"The assignments of error will be grouped in propositions of law.

### "PROPOSITIONS

#### I

"Cancellation of a written instrument voluntarily executed and recorded will be denied except in a clear case in which the evidence is strong and convincing.

#### II

"Equity requires that a party seeking the cancellation of a written instrument must exercise the degree of diligence which may be fairly expected from a reasonable person.

#### III

"Equity will not cancel a written instrument against a party whose conduct did not contribute to or induce a mistake of fact."

Plaintiff alleges the following:

"The proposition is this: Equity may restore the parties to their original position where one party mistakenly executes an instrument through misconception or ignorance and where the other party makes no change in position in reliance on that mistake."

Both parties have ably briefed their respective propositions; i. e. defendant has cited numerous cases from our Supreme Court found under contracts, first Stafford v. McDougal, 171 Okl. 106, 42 P.2d 520, wherein the Court held as follows:

"Cancelling an executed contract is an exertion of the most extraordinary power of a court of equity. The power ought not to be exercised except in a clear case, and never for an alleged fraud, unless the fraud be made clearly to appear; never for alleged false representations, unless their falsity is certainly proved, and unless the complainant has been deceived and injured by them."

Further the case of Teachers' Conservative Inv. Ass'n v. England, 115 Okl. 298, 243 P. 137, to the effect that

"Equity will not extend its aid to one who has been guilty of culpable negligence. It requires that the party who asks relief on the ground of mutual mistake shall have exercised at least the degree of diligence which may be fairly expected from a reasonable person."

Also numerous cases supporting the maxim "Equity assists only the vigilant" where the court refused to give relief against mistakes which ordinary care would have prevented.

Plaintiff maintains that equity can rectify a mistake, citing Frazier v. Powell, 169 Okl. 537, 37 P.2d 920 for the proposition that there must be a meeting of the minds for the existence of a binding contract.

15 O.S. 1971, § 63 reads as follows:

"Mistake of fact is a mistake not caused by the neglect of a legal duty on the part of the person making the mistake, and consisting in:

"1. An unconscious ignorance or forgetfulness of a fact past or present, material to the contract; or,

"2. Belief in the present existence of a thing material to the contract, which does not exist, or in the past existence of such a thing, which has not existed."

In the case of United States v. Jones, 176 F.2d 278 (9th Cir.) the court commented that "the modern tendency is to recognize unilateral mistake as a ground for rescission of an unexecuted contract . . . . . the principle is applied when the mistake was known to the other party to the transaction."

In the case of Humble Oil and Refining Co. v. Chappuis, 239 So.2d 400 (La.1970), portions of the oil and gas lease were committed to three producing units. One of the units ceased to produce and the lease contained a provision for cancellation as to any acreage which ceased to produce. Cliff Morrow, a lease broker (not the lessors), requested a release of the non-producing acreage and through error, the Humble Lease Records section prepared a release of all acreage in the lease, including the land committed to two producing units. The court applied the rule that "Mutual error of fact is not necessary to abrogate a contract," citing the Pan American case [Pan American Petroleum Corp. v. Kessler, D. C., 223 F.Supp. 883] as one dealing with an error of fact. The court further said:

"Under these authorities, it is clear that the release dated September 26, 1966 was executed through error of fact which vitiates the consent of Humble and renders the instrument unenforceable. There can be no question that Humble did not intend to release those portions of the Chappuis tract which remained in the two producing units. It is incredible that Humble's employees intended to voluntarily give up such valuable assets for no consideration whatever. Mr. Morrow did not even request such a release. Mr. Spence, who made the original error by placing the red 'R' on the Special Drill Sheet, did not intend to release the producing acreage, nor did Miss Wells or Mr. Saint. Mr. Matthews signed the release thinking that all of the leases had expired. He would not have signed had he known the release covered producing lease interests valued at $1,792,527."

The Colorado case of Holt v. Mitchell, 96 Colo. 412, 43 P.2d 388, 389, states as follows:

"It is a well-recognized proposition of law that one who relies on the negligence of another as a ground for recovery, or to prevent recovery by another, before he can prevail must show that by reason of such negligence he has been damaged or has done something he would not have done or failed to do something he otherwise would have done to his prejudice in reliance thereon."

 It is well established in Oklahoma that in a case of equitable cognizance the

reviewing court will examine the record and weigh the evidence, but will not disturb a judgment unless it is against the clear weight of the evidence or contrary to law or established principles of equity. See Wetsel v. Johnson, 468 P.2d 479 (Okl. 1970); Morris v. Pierce et al., 188 Okl. 396, 110 P.2d 295 (1940). Also Dumas v. Conyer, 448 P.2d 835 (Okl.1968).

■ In the instant case, a mistake of fact has occurred, which was a simple human error. The principle of equity can allow this to be rectified, as the defendant Flag-Redfern Oil Company was not damaged by such mistake and would receive a great advantage if the results were otherwise.

Accordingly, the judgment of the trial court is affirmed.

BAILEY, P. J., and ROMANG, J., concur.