Joe W. HAYES, Ty M. Sparks, Cecil Meadows, and Susan Krehbiel, Appellants,

v.

E.T.S. ENTERPRISES, INC., Appellee.

No. 07–90–0073–CV.

Court of Appeals of Texas, Amarillo.

May 9, 1991.

Rehearing Overruled June 5, 1991.

Robert L. Templeton & Associates, Amarillo, Joe W. Hayes, Ty M. Sparks, Canadian, for appellants.

Nickum and Naylor, Ronald D. Nickum, Amarillo, for appellee.

Before REYNOLDS, C.J., and BOYD and POFF, JJ.

BOYD, Justice.

In one point, appellants Joe W. Hayes, Ty M. Sparks, Cecil Meadows and Susan Krehbiel say the trial court erred in granting a summary judgment in favor of appellee E.T.S. Enterprises, Inc. We disagree and affirm the judgment of the trial court.

Appellants own an undivided mineral interest in the west one-half (W/2) of Section 4, Block Z–1, ACH & B Survey in Hemphill County, Texas (the Property). On April 2, 1982, Cecil Meadows and wife Emma Jean Meadows, executed an oil and gas lease to Tom L. Scott, Inc., covering the Property. On May 14, 1982, this lease was conveyed to the Pogo Producing Company (Pogo).

On November 30, 1983, the Meadows conveyed a 1.5/320 mineral interest to appellant Joe W. Hayes, and a like interest to appellant Ty M. Sparks. On September 11, 1986, Hayes conveyed a .75/320 mineral interest to appellant Susan Krehbiel (nee Martha Susan Hayes).

On February 20, 1985, Pogo executed a "farm out" agreement to appellee by the terms of which appellee was obligated to drill a test well upon a pooled unit which included all of Section 4. Appellee commenced drilling operations upon the tract on or about April 5, 1985, and completed a producing well on December 27, 1985.

On May 14, 1985, during the course of appellee's drilling operations, Pogo executed a release of the oil and gas lease. Subsequently, on June 24, 1985, by an instrument denominated as a "Revocation and Rescission of Release of Oil and Gas Leases," which recited it had not been its intent to release its oil and gas lease, Pogo sought to revoke and rescind the release. By an instrument dated March 19, 1986, but which recited its effective date as of October 2, 1985, and which recited it was made without express or implied warranty of title, Pogo assigned the lease to appellee. In the transfer, Pogo retained an overriding royalty interest equal to the difference between all existing leasehold burdens of record and 25% of 8/8 production.

In the action giving rise to this appeal, appellee sought a declaratory judgment that Pogo's release was ineffective because it was the result of a mistake. They further alleged even if Pogo's release was effective, appellee had obtained a limitation title to an oil and gas leasehold estate pursuant to Texas Civil Practice & Remedies Code Annotated § 16.024 (Vernon 1986) (three year statute). Appellee's successful motion for summary judgment was also based upon these grounds.

Appellants contend the summary judgment should not have been granted on either ground. Initially, they contend that any mistake in the execution of the release was a unilateral one on Pogo's part and cannot support either cancellation or rescission. Alternatively, they say, if such a unilateral mistake is to be the basis of the relief sought, it must meet the requirements of a "remedial mistake." Those requirements do not exist, they continue, because (a) there exists a genuine issue of material fact whether the execution and filing of the release was in fact a mistake, (b) appellee offered no summary judgment proof that to enforce the release would be unconscionable, and (c) there exists a genuine issue of material fact whether Pogo exercised ordinary care in the execution and filing of the release.

With regard to the limitation contention, appellants contend that appellee did not prove the unbroken chain of title from the sovereign to appellee which is a requisite of the three year limitation statute. They also contend that the effect of the release was to make appellee and appellants co-tenants, and a fact question exists as to whether appellee repudiated appellants' title.

■ The rules governing the decision of appeals from summary judgments are well established. Under Rule 166a of the Texas Rules of Civil Procedure,[1] the summary

---

**1.** Unless otherwise specified, future reference to rule numbers are to those rules contained in the

Texas Rules of Civil Procedure.

judgment movant must establish there is no genuine issue of fact and the movant is entitled to judgment as a matter of law. *MMP, Ltd. v. Jones,* 710 S.W.2d 59, 60 (Tex.1986); *City of Houston v. Clear Creek Basin Authority,* 589 S.W.2d 671, 678 (Tex.1979). We are required to view summary judgment evidence in the light most favorable to the non-movant and resolve any doubt of the existence of a genuine issue of material fact against the movant. *Nixon v. Mr. Property Management,* 690 S.W.2d 546, 548–49 (Tex.1985); *Montgomery v. Kennedy,* 669 S.W.2d 309, 311 (Tex.1984). Since the trial court did not specify which of appellee's theories was relied upon for summary judgment, it will be affirmed on appeal if any of the theories advanced are meritorious. *Rogers v. Ricane Enterprises, Inc.,* 772 S.W.2d 76, 79 (Tex.1989); *Carr v. Brasher,* 776 S.W.2d 567, 569 (Tex.1989).

Another case styled *Pogo Producing Company v. Cecil Meadows et al.,* No. 32,319–A in the 47th District Court of Randall County, involved the same facts and legal issues in controversy in this case. Although appellee was not a party to that suit, the trial court allowed depositions taken in that case to be used in this one.

As summary judgment evidence and pertinent to its mistake ground, appellee attached excerpts from the deposition of Kenneth Good, an employee of Pogo, taken in the instant case. In that deposition, Good testified that, although he intended to sign the release at the time he did so, he would not have signed it had he known of the farm-out agreement to appellee and that well drilling operations were proceeding upon the tract in question. He recited the preliminary procedures that were standard in his company and said that, by the time a release was submitted to him, his signature was a mere formality as the release had been cleared by those below him responsible for its accuracy.

He also stated this was the only time such a mistake had been made by Pogo in the twelve years of his employment, and it was made because the information about the farm-out and the well drilling was not included. Had he known about this missing information, he would not have signed and "would also determine how the error occurred and have the situation corrected." He averred that there was absolutely nothing to be gained by Pogo by executing the release where a farm-out existed and drilling had commenced. He characterized the signing of the release as a "mistake. A clerical error. A fluke."

The summary judgment motion was also supported by the affidavit of John W. Chisholm, appellee's senior vice president in charge of administration of oil and gas leases, production, marketing and well operations. He averred that the well on the premises was spudded on April 5, 1985, and was completed on December 27, 1985, with an absolute open flow potential of 17,500,-000 cubic feet of gas per day.

In opposition to appellee's motion, and relevant to the mistake contention, appellants advanced deposition testimony of Gina Gresham taken in the Randall County case. Ms. Gresham was also an employee of Pogo. In that testimony, she recounted in some detail the procedures followed by Pogo in the preparation of releases of oil and gas leases and the company's endeavors to ensure their accuracy. She said the farm-out agreement was not in Pogo's file on the premises at the time it was checked by Cathy Zella, the employee designated to do so, nor was it there at the time the release was executed.

Under Pogo's standard operating procedure at the time, had the information about the agreement been in the file, no release would have been prepared. She said the release "was an error, 'big time.' You don't prepare a release on a producing lease." After the execution of the release was discovered, she discussed the mistake with everyone in her department, "and built up better procedures." She also said, "We just don't prepare releases like we used to." In addition, she told Bruce May, another employee of Pogo, that he was partly responsible for the error, because "the obligation dates on these instruments (the farm-out agreements) were such that he should have taken immediate action to

note the files with this information. And I'm sure I made him aware of that."

Appellants also presented excerpts from deposition testimony of Bruce May taken in the other suit. In that testimony, May said that Ms. Gresham had told him he was partially responsible for the execution of the release and that Cathy Zella was also responsible because she prepared the release. He said that "HBP" was the code placed in files held by production but it had not been placed in the file in question. That code should have been inserted in files where a lease had been farmed out and a well spudded. However, May did not feel responsible because he felt Pogo should not rely exclusively upon code symbols in the files but should consult with the district land office to determine lease activity.

In their response, appellants also referred to portions of deposition testimony of Good taken in the suit to which Pogo was a party. In those portions, Good said he was the only person who signed releases for Pogo. When a release was put on his desk, he did not make an independent investigation to determine if it should be executed since he had given that responsibility to the manager of land administration. When he received releases to be executed, they were accompanied by a memorandum that "basically explains to me that the lease has expired and that it's an order to execute the release." Whenever Good received such a memorandum, he assumed that whatever steps that needed to have been taken to verify the correctness of the release had been taken. At the time in question, that verification would have been the responsibility of Sherri Mills, Cathy Zella, or Bruce May. He also stated that when he signed the release, he intended to do so.

In asserting the evidence is insufficient to support summary judgment, appellants place particular reliance upon Good's testimony. They argue that the testimony indicates that Good's execution of the release was an intentional act, not a mistake for which relief might lie. In support of that position, they especially point out, and rely upon, testimony that no one tricked Good

into signing the release and when he signed it, he intended to surrender Pogo's interest in the lease. In the alternative, they posit that, even viewed in a light most favorable to appellee, Good's testimony creates a fact question whether the execution and filing of the release was a mistake.

■ Parenthetically, appellants contend specifically that Good's testimony and inferentially, the testimony of the other employees of Pogo should be considered as that of an interested witness and judged by that standard. Although Pogo is not a party to this suit, it is a party to another suit which will, apparently, determine the effect of the release insofar as its interests are concerned. However, because of the similarity of Pogo's interests to those of appellee, we will consider the testimony of its employees in this case as that of interested witnesses. *See Martin v. Cloth World of Texas, Inc.,* 692 S.W.2d 134, 135–36 (Tex.App.—Dallas 1985, writ ref'd n.r. e.); *Hunsucker v. Omega Industries,* 659 S.W.2d 692, 697 (Tex.App.—Dallas 1983, no writ).

In pertinent part, Rule 166a(c) provides that a summary judgment may be based upon the testimony of an interested witness, "if the evidence is clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted."

Prior to an amendment effective January 1, 1978, the rule governing summary judgments did not expressly authorize consideration of the testimonial evidence of an interested witness. However, the Supreme Court's construction of the rule had authorized use of the interested witness' evidence, under certain conditions. *Gibbs v. General Motors Corporation,* 450 S.W.2d 827 (Tex.1970); *Great American R. Ins. Co. v. San Antonio Pl. Sup. Co.,* 391 S.W.2d 41, 47 (Tex.1965).

■ In the *Great American* case, the Court set out the conditions authorizing consideration of, and decision upon, the testimony of an interested witness. Those conditions require that such evidence be uncontradicted, clear, direct and positive, free of circumstances tending to discredit

or impeach, and readily controverted. *Great American R. Ins. Co. v. San Antonio Pl. Sup. Co.*, 391 S.W.2d at 47. The Court also commented that such testimony was especially entitled to reliance where the opposite party had the means and opportunity of disproving the testimony but did not do so. *Id.*

■ Parenthetically, it was also established as a general rule that the testimony of an interested party as to what that witness knew or intended to do or as to the witness' state of mind does no more than raise an issue of fact and would not support summary judgment. The rationale for that qualification is obvious, *i.e.,* the mental workings of an individual's mind are matters about which adversaries have no knowledge or ready means of confirming or controverting. *See Lewisville State Bank v. Blanton,* 525 S.W.2d 696 (Tex. 1975); *James T. Taylor, Etc. v. Arlington Ind. School Dist.,* 160 Tex. 617, 335 S.W.2d 371, 376 (1960); *Northrup v. O'Brien,* 474 S.W.2d 614, 618 (Tex.Civ.App.—Dallas 1971, no writ).

Those conditions and qualifications are the tests which Texas courts have traditionally applied to an interested witness' testimony in determining whether a fact is established or negated as a matter of law, whether in summary judgment proceedings or in jury or non-jury trials. *Great American R. Ins. Co. v. San Antonio Pl. Sup. Co., supra; Valley Stockyards Co. v. Kinsel,* 369 S.W.2d 19, 20 (Tex.1963); *James T. Taylor, Etc., v. Arlington Ind. School Dist.,* 335 S.W.2d at 376; *Owen Development Company v. Calvert,* 157 Tex. 212, 302 S.W.2d 640, 642 (1957); *McGuire v. City of Dallas,* 141 Tex. 170, 170 S.W.2d 722, 728 (1943); *Simonds v. Stanolind Oil & Gas Co.,* 134 Tex. 332, 136 S.W.2d 207, 208 (1940).

The present rule formally recognizes the admissibility of the testimony of an interested witness and carries forward the same qualifications and conditions previously explicated by court decisions. *See Lofton v. Texas Brine Corp.,* 777 S.W.2d 384, 386 (Tex.1989); *Beaumont Enterprise & Journal v. Smith,* 687 S.W.2d 729, 730 (Tex. 1985); *Allied Chemical Corp. v. DeHaven,* 752 S.W.2d 155, 157–58 (Tex.App.—Houston [14th Dist.] 1988, writ denied).

The decision of the sufficiency of the testimony of interested witnesses to support a summary judgment, of necessity, must be decided on a case-by-case basis bearing in mind the requirement of the rule and the teachings of the above cases. In this case, appellants assert and appellee does not challenge, that Good understood he was executing a release at the time he signed it. Thus, the question of his intent or mental process in actually executing the instrument is not in issue here.

What is in issue, in the words of appellee's motion, is whether:

E. Subsequent to the execution of the farmout agreement from Pogo to E.T.S., and while ETS was in the process of drilling a test well on Section 4, an employee of Pogo mistakenly and inadvertently prepared, executed and sent for filing a document entitled "Release of Oil and Gas Leases". . . .

■ That question is one involving matters susceptible of objective proof or disproof, such, among others, as whether a release was properly due under the lease, whether the typing and forwarding of the release for signature, if a release was not properly due, was the result of a breakdown in standard operating procedures, and if so, what was the defect in those procedures that caused the forwarding of the release for execution.

It is true that the only testimony bearing upon these matters comes from employees of Pogo. However, that testimony is clear, direct, and positive. It is uncontroverted and there are no circumstances in evidence tending to discredit or impeach their testimony. In sum, these proofs, in the words of the Court in the seminal case of *Channel 4, KGBT v. Briggs,* 759 S.W.2d 939, 942 (Tex.1988) when it upheld the sufficiency of similar summary proof, "go far beyond state of mind to establish an objective explanation for the mistake." *See also Republic Nat. Leasing Corp. v. Schindler,* 717 S.W.2d 606, 607 (Tex.1986); *Americana Motel, Inc. v. Johnson,* 610 S.W.2d 143

658

(Tex.1980); *Great American R. Ins. Co. v. San Antonio Pl. Sup. Co., supra; American Quality Roofing, Inc. v. Ipock*, 730 S.W.2d 470, 472 (Tex.App.—Fort Worth 1987, no writ); *Amara v. Lain*, 725 S.W.2d 734, 736 (Tex.App.—Fort Worth 1986, no writ); *Metro Siding Distributors v. Master Shield, Inc.*, 717 S.W.2d 455, 457 (Tex. App.—Fort Worth 1986, writ ref'd n.r.e.); *Duncan v. Horning*, 587 S.W.2d 471, 474 (Tex.Civ.App.—Dallas 1979, no writ); *Longoria v. Texaco, Inc.*, 649 S.W.2d 332, 335–36 (Tex.App.—Corpus Christi 1983, no writ).

In support of their proposition that the evidence was insufficient to establish mistake as a matter of law, appellants place considerable reliance upon *Ladd Petroleum Corp. v. Eagle Oil & Gas Co.*, 695 S.W.2d 99 (Tex.App.—Fort Worth 1985, writ ref'd n.r.e.). In that case, as relevant here, the court was considering a contention that the testimony of Ladd's witnesses, in a jury trial, was sufficient to establish as a matter of law that the release of the oil and gas lease involved there was filed by mistake. In that respect, admittedly in dictum, the court said the jury in the case was entitled to weigh the testimony of the witness and made the blanket statement that "[t]he testimony of an interested witness does no more than raise a fact issue." *Id.* at 107.

That general statement, as applied in a summary judgment proceeding is not only in derogation of the express provision of Rule 166a(c) set out above, but is also in derogation of the well established law prior to the inclusion of the provision in Rule 166a. As such, the case cannot be considered as authority on that point. Parenthetically, the *Ladd* case is the only Texas case cited by either party which, even peripherally, deals with a release of an oil and gas lease because of a unilateral mistake and that case is not sufficiently analogous to be helpful in our decision.

The summary judgment evidence was sufficient to establish that Good's admitted execution of the release was the result of a mistake. Having made that determination, we must next consider the viability of ap-

pellants' invocation of what they denominate as the rule of "remedial mistake." Concomitantly with that invocation, appellants argue even if the release was executed by unilateral mistake, appellee is not entitled to relief because it has not satisfied the requirements of that rule.

In support of their position that appellee is not entitled to relief, appellants place primary reliance upon the case of *Roland v. McCullough*, 561 S.W.2d 207 (Tex.Civ. App.—San Antonio 1977, writ ref'd n.r.e.). In that case, Roland had purchased a 200–acre tract from McCullough. The appeal arose from a summary judgment granting McCullough recovery on two promissory notes as well as foreclosure of a deed of trust on the 200–acre tract.

The land purchased by Roland apparently had no access to an interstate highway (IH 10) close by. Roland contended that although McCullough did not tell him there was access to IH 10, he did not tell him there was *no* such access. He also contended that McCullough furnished him with a map of the land from which it could be reasonably inferred access existed; and, at the time Roland originally inspected the property, while IH 10 was under construction, he entered the property from IH 10.

■ Relevant to this case, the court held that Roland was not entitled to equitable relief on the ground of unilateral mistake. To be entitled to such relief, said the court, a party must show: (1) the mistake is of so great consequence that to enforce the contract as made would be unconscionable; (2) the mistake relates to a material feature of the contract; (3) the mistake must have been made regardless of the exercise of ordinary care; and (4) the parties can be placed in status quo in the equity sense, *i.e.*, rescission must not result in prejudice to the other party except for the loss of his bargain. *Id.* at 213.

In assuming the applicability of this doctrine to the instant case, appellants argue the summary judgment evidence is insufficient to show the unconscionability of enforcing the release and to show that the mistake would have been made regardless of the exercise of ordinary care.

We do not think the elements set out in the *Roland* case, particularly the one requiring a showing that the mistake would have occurred regardless of the exercise of ordinary care, are applicable here. Indeed, in *James T. Taylor, Etc. v. Arlington Ind. School Dist., supra,* the Court had occasion to discuss at some length the effect of negligence on the part of one claiming equitable relief for his own mistake. After surveying relevant contract cases, the Court concluded, "We think the authorities, both from this state and from other jurisdictions, clearly indicate that in cases of this kind (contract cases) ordinary negligence will not necessarily bar the granting of equitable relief." *James T. Taylor, Etc. v. Arlington Ind. School Dist.,* 335 S.W.2d at 375.

In additional explication the Court stated that it is only when negligence amounts to such carelessness or lack of good faith as to amount to a violation of a positive duty will equitable relief be denied the supplicating party. *Id.* En route to that conclusion, the Court quoted with approval a statement from *Edwards v. Trinity & B.V. Ry. Co.,* 54 Tex.Civ.App. 334, 118 S.W. 572 (1909, writ ref'd), that "[e]ven a clearly established negligence may not of itself be a sufficient ground for refusing relief, if it appears that the other party has not been prejudiced thereby." *Id.* The Court also commented that the elements to show entitlement to relief were generally fact questions unless they "can be resolved by the court under the undisputed evidence." *Id.* 335 S.W.2d at 376. Although the *Taylor* decision resulted from a suit involving a construction contract, its teachings are also applicable to a case such as this one.

A study of *Roland,* in which all of the elements set out in that case have been strictly applied, as well as other similar cases, reveals that these are instances arising out of contracts based upon an offer and acceptance, a negotiation, mutuality of consideration, and performance. Once a bargain has been reached in those instances, it would clearly be inequitable to allow one party relief on the basis of a unilateral mistake without the necessity of pleading and proving each of the enumerated elements. This cause, of course, does not arise from a suit in which a party is suing another party seeking relief from such a negotiated contract.

In this instance, we think the proper rule to apply is that stated in *Armbruster v. Thetis Energy Corp.,* 675 P.2d 476 (Okl. App.1983). In that case, a lessee sought cancellation of a release of an oil and gas lease executed by the lessee under the mistaken belief that the lease had expired. In such a situation, the court held the lessee was entitled to cancellation of the release unless (1) the cancellation would offend the rights of an innocent purchaser for value or (2) another party in good faith and in innocent reliance, *i.e.,* reliance without notice or knowledge of facts which would suggest the probability of an invalid release, had made a position alteration that could not be reversed without significant prejudice. *Id.* at 478. *See also Mobil Oil Corp. v. Flag–Redfern Oil Co.,* 522 P.2d 651 (Okl.App.1973).

■ In our case, appellants admit they did not learn of the existence of the release until sometime during the summer of 1985, which would be after Pogo filed the "Revocation and Rescission of Oil and Gas Leases." In deposition testimony, appellant Hayes said he could not recall if he relied on the release; however, he did not try to lease, sell, or develop his interest. When asked if he had suffered any detriment by the release, he answered, "I would have to think about that." Appellant Meadows said he did not rely on the release, or lease or develop his interest. Appellant Sparks said he did not "tout" his mineral interest to third parties to lease, was not contacted by third parties to lease, and did not attempt to drill on the acreage himself. Appellant Susan Krehbiel's interest was not conveyed to her by appellant Hayes until September 11, 1986. The summary judgment evidence is sufficient to show that appellants made no detrimental position change in innocent reliance upon the Pogo release.

In *Mobil Oil Corp. v. Flag–Redfern Oil Co.,* 522 P.2d at 656, the court ruminated,

"In the instant case, a mistake of fact has occurred, which was simple human error. The principle of equity can allow this to be rectified, as the defendant Flag–Redfern Oil Co. was not damaged by such mistake and would receive a great advantage if the results were otherwise." That summation is applicable to this case, particularly since the negligence, if any, in preparing and executing the release was that of a third party and not that of appellee.

Since we have held that appellee is entitled to its judgment on the basis discussed above, and since one of its theories supports the judgment, the necessity of discussing appellee's limitation theory is obviated. Appellants' point of error is overruled and the trial court judgment is affirmed.

POFF, J., dissents.

POFF, Justice, dissenting.

I respectfully dissent from the affirmance of the granting of the summary judgment. I cannot agree with the majority's determination that the evidence offered by the employees of Pogo was readily controvertible. I do agree that the Pogo employees are interested witnesses, for Pogo, as the owner of an overriding royalty in the Meadows lease, has a direct interest in the outcome of this suit. If the contested release is held to be a valid release, Pogo will lose its overriding royalty interest.

I also agree with the majority that the question to be resolved is not the knowledge or intent of Mr. Good, the signator of the release, but rather the question to be resolved is "did an employer of Pogo mistakenly and inadvertently prepare the release for Good's signature." I disagree that the question is susceptible of objective proof or disproof.

In explaining the basis for preparing the release, Pogo's employees stated in their depositions that the Meadows lease file did not contain the Pogo assignment to E.T.S. Enterprises, nor did the file contain any information concerning the commencement of drilling on the Meadows lease. The sum of Pogo's evidence was that the Meadows lease file indicated a dormant lease, which was subject to being released. Pogo's employees also deposed that the failure to file an assignment, and the failure to note in a lease file drilling activity or production was a departure from Pogo's standard operating procedure.

The majority opines that, whether the release was properly due, whether the preparation of the release was the result of a breakdown in standard operating procedures and what defect in those procedures caused the release to be signed, are matters susceptible of objective proof or disproof. I do not agree, for I fail to see how Hayes *et al.* could have objectively disproved what knowledge Pogo's employees possessed at the time of the preparation of the release, nor do I envision any manner in which Hayes could recreate the status of the Meadows lease file as it existed at the time in question. The basis for the preparation of the release and the facts upon which these actions were taken lies solely within the knowledge of the actors, the interested witnesses. The truth or falsity of E.T.S. Inc.'s evidence stands solely on the credibility of the interested witnesses. An affidavit by an interested witness to a matter which the adversaries have no knowledge or real means of confirmation does no more than raise an issue of fact. *Lewisville State Bank v. Blanton*, 525 S.W.2d 696, (Tex.1975).

Not being present at Pogo's office at the time of the preparation of the release and not having access to what facts and knowledge was possessed by Pogo's employees when they prepared the release, Hayes had no basis upon which to dispute their story. The only eyewitnesses are Pogo employees. All physical or documentary evidence was under the exclusive control of Pogo. In this case, I can envision no outside or independent source Hayes could have mustered to controvert Pogo's explanation for the preparation of the release. The facts presented by Pogo's employees were not subject to outside objective verification nor was there a basis upon which to offer opinion or expert testimony. I envision Hayes' only option to have been the filing of a counter affidavit disputing E.T.S.

Inc.'s evidence. Such a counter affidavit would have at best been based on assumptions and conjecture and at worst it would have been perjurious.

The majority finds E.T.S.'s summary judgment evidence similar to that summary judgment proof offered in *Channel 4, KGBT v. Briggs*, 759 S.W.2d 939 (Tex. 1988), and concludes that the evidence goes far beyond state of mind to establish an objective explanation for the mistake. In *Briggs*, which was a libel suit, the Supreme Court found the technical procedures for the production of the telecast (such procedures being claimed by Channel 4 to be the basis for the technical mistake) to be subject to investigation. The technical process (by which Channel 4 alleged the news special was dubbed over a political file tape from which Briggs' image had not been completely erased) was such that it could have been disputed by third parties testifying on Briggs' behalf.

I do not find the actions of Pogo's employees in allegedly failing to file or note the E.T.S. assignment, to be a technical mistake subject to investigation, or possible disproof by extraneous sources. I find the mistake and the explanation to be more similar to the mistake made in *James T. Taylor, Etc. v. Arlington Ind. School Dist.*, 160 Tex. 617, 335 S.W.2d 371 (1960); wherein a contractor attempted to explain that his bid was incorrect, due to his failure to properly carry a digit while adding his cost and preparing his bid. Taylor's employee's affidavit setting out the mistake was held not to be sufficient summary judgment proof. The court opined the affidavit was evidence from an interested party which could not be readily controverted if untrue. In such cases, the credibility of the witness is presented and a summary judgment is improper. Evidence resting solely on the credibility of the interested witness is more effectively tested in court at trial than by sterile affidavits at a summary judgment hearing. The trier of fact is uniquely qualified to observe the demeanor of the witnesses as well as his responses, and to test the credibility of the witnesses.

I therefore cannot agree that the evidence offered by the interested witnesses was sufficient evidence upon which to grant the summary judgment. I therefore cannot join in the majority opinion.