TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-94-00039-CV







L. F. Clark; Annie Rosalis; Alice Tabor; and Joyce Bailey, Appellants



v.



City of San Antonio, acting by and through its agent, City Public Service Board


of San Antonio; and Milton Mundine, Appellees







FROM THE DISTRICT COURT OF LEE COUNTY, 21ST JUDICIAL DISTRICT


NO. 9678, HONORABLE HAROLD R. TOWSLEE, JUDGE PRESIDING








 Appellants L. F. Clark, Annie Rosalis, Alice Tabor and Joyce Bailey appeal from
rulings on opposing summary judgments in a declaratory judgment action, rendered in favor of
the City of San Antonio, by and through City Public Service Board of San Antonio ("CPSB") and
Milton Mundine, third-party defendant. We will reverse the trial-court judgment granting CPSB's
motion for summary judgment and affirm in part and reverse in part the court's ruling on Milton's
motion for summary judgment.



THE CONTROVERSY


 In two points of error, appellants challenge the trial court's judgment declaring
CPSB to be the owner of approximately 105 acres located in Lee County ("the property") and
denying the appellants' claims of ownership based on their theories of adverse possession and
constructive trust. The recorded chain of title of the property is not in dispute. S. H. Mundine
conveyed the property to one of his thirteen sons, Elbert Mundine, in 1922. In 1940 Elbert
conveyed the property in undivided shares to three of his siblings, Titus Mundine, Lottie
Mundine, and Milton Mundine. At the time of this conveyance, Titus was married to Bessie
Mundine. Titus and Bessie divorced in 1953; their divorce decree, however, failed to mention
or divide the property. In 1955, Titus conveyed his interest in the property to Milton, who
conveyed his interest in the property to CPSB in 1983. Bessie did not join in the conveyance. 
On the same day, CPSB also purchased appellant Clark's interest in the same property.

 Appellants contend that because the 1953 divorce decree failed to dispose of the
property, Titus and Bessie became tenants in common, each owning an undivided one-sixth
separate property interest in the tract. Bessie died intestate in 1955, survived only by Rosalis,
Tabor, and Bailey. Each claim to own an undivided one-eighteenth interest in the property by
virtue of their inheritance from Bessie. In 1990, seven years after CPSB acquired legal title to
the property, Rosalis, Tabor and Bailey executed a lease on the property to Clark. CPSB filed
this declaratory judgment action seeking to clear title to the property.



DISCUSSION AND HOLDINGS


 The standards for reviewing a motion for summary judgment are well established:
(1) The movant for summary judgment has the burden of showing that no genuine issue of
material fact exists and that it is entitled to judgment as a matter of law; (2) in deciding whether
there is a disputed material fact issue precluding summary judgment, evidence favorable to the
nonmovant will be taken as true; and (3) every reasonable inference must be indulged in favor of
the nonmovant and any doubts resolved in its favor. Nixon v. Mr. Property Management Co., 690
S.W.2d 546, 548-49 (Tex. 1985).

 In their first point of error, appellants contend the trial court erred in granting
CPSB's motion for summary judgment. Appellants' contentions are based upon the assumption
that Bessie had a community-property interest in the property conveyed to Milton. Titus acquired
the property by conveyance from Elbert while Titus was married to Bessie and then sold the
property after they divorced. There is a strong presumption that property acquired during
marriage is community property. Tex. Prop. Code Ann. § 5.02 (West 1993). If we assume for
summary judgment purposes that the property was community property, Titus acquired legal title
to the land CPSB now claims, as Titus was the only grantee named in the warranty deed, while
Bessie acquired equitable title. Patty v. Middleton, 17 S.W. 909, 910-11 (Tex. 1891); Buckalew
v. Butcher-Arthur, Inc., 214 S.W.2d 184, 193 (Tex. Civ. App.--Beaumont 1948, writ ref'd n.r.e.). 
CPSB contends that it qualifies as a bona fide purchaser for value (1) and that any interest of Bessie's
heirs was extinguished upon CPSB's purchase of the land. A bona fide purchaser for value will
prevail over a holder of prior equitable title. Wilson v. Meredith, Clegg & Hunt, 263 S.W.2d
511, 516 (Tex. Civ. App.--Beaumont 1954, no writ); Buckalew, 214 S.W.2d at 193; Ellett v.
Mitcham, 145 S.W.2d 917, 919 (Tex. Civ. App.--Eastland 1940, writ dism'd).

 CPSB asserts that the holder of equitable title bears the burden to show that the
holder of legal title is not an innocent purchaser, citing Westland Oil Development Corp. v. Gulf
Oil Corp., 637 S.W.2d 903 (Tex. 1982) and Walters v. Pete, 546 S.W.2d 871 (Tex. Civ.
App.--Texarkana 1977, writ ref'd n.r.e.). In Westland Oil, the supreme court stated that the
plaintiff claiming an equitable interest in the land had the burden of proving on motion for
summary judgment that the holder of the legal interest was not a bona fide purchaser for value. 
However, in Westland Oil the holder of the equitable interest was also the movant for summary
judgment. Westland Oil, 637 S.W.2d at 904-08. The party asserting an equitable interest at a
conventional trial on the merits bears the burden of proof. Walters, 546 S.W.2d at 876; Wilson,
263 S.W.2d at 516; Buckalew, 214 S.W.2d at 193; Ellett, 145 S.W.2d at 919. This rule does not,
however, relieve the movant for summary judgment from conclusively proving all essential
elements of its cause of action as a matter of law. Missouri-Kan.-Tex. Ry. Co. v. City of Dallas,
623 S.W.2d 296, 298 (Tex. 1981); David Hitner & Lynne Liberato, Summary Judgments in
Texas, 20 St. Mary's L.J. 243, 267 (1989).

 The only disputed issue regarding CPSB's bona fide purchaser status is whether
CPSB had notice of Titus's marriage to Bessie at the time of the purchase. A purchaser of land
is not charged with knowledge of the marital history of each grantor in the chain of title, absent
a recitation in the deed that would put the purchaser on notice. Stahl v. Westerman, 250 S.W.2d
325, 327 (Tex. Civ. App.--San Antonio 1952, no writ). CPSB lacked constructive notice of any
interest Bessie had because there was no record of her interest in the chain of title; therefore, we
are concerned only with actual notice, express or implied. See Westland Oil, 637 S.W.2d at 911-12 (Wallace, J., dissenting). 

 CPSB provided the affidavits of C. Michael Montgomery, CPSB's attorney
handling the purchase, and F. R. Rinner, CPSB's landman at the time of the purchase, to establish
that CPSB was without notice of Titus's marriage to Bessie. (2)

 Appellants contend the affidavits of Montgomery and Rinner, which purport to
prove that CPSB lacked notice, do not constitute competent summary judgment evidence under
rule 166a. See Tex. R. Civ. P. 166a. These affidavits, appellants assert, could not be readily
controverted because the affidavits only state that the affiants had no personal knowledge of any
notice possessed by the city or by city representatives and did not state conclusively that the city
did not have personal knowledge. Summary judgment based upon the affidavit of an interested
expert witness may be upheld if the affidavit meets the requirements of rule 166a of the Texas
Rules of Civil Procedure. Anderson v. Snider, 808 S.W.2d 54, 55 (Tex. 1991); Shook v.
Herman, 759 S.W.2d 743, 746-47 (Tex. App.--Dallas 1988, writ denied). Thus, the subject
matter of the affidavit must be that of "which the trier of fact must be guided solely by the opinion
testimony of experts," if the testimony is "clear, positive and direct, otherwise credible and free
from contradictions and inconsistencies, and could have been readily controverted." Tex. R. Civ.
P. 166a(c). Additionally, the affidavits must be made on personal knowledge and be admissible
in evidence. Tex. R. Civ. P. 166a(f); Har-Con Corp. v. Aetna Casualty & Sur. Co., 757 S.W.2d
153 (Tex. App.--Houston [1st Dist.] 1988, no writ). Mere legal conclusions will not support
summary judgment. Anderson, 808 S.W.2d at 55; Hidalgo v. Surety Sav. & Loan Ass'n, 487
S.W.2d 702, 703 (Tex. 1972). The attorney and the landman for the city have personal
knowledge of whether they were personally informed of Bessie's interest in the property. The
question remains, however, whether this personal knowledge proves as a matter of law that CPSB
had no actual notice of Titus's marriage to Bessie. 

 Notice is usually a fact question for the trier of fact; it becomes a question of law
only when ordinary minds could not differ as to proper conclusions to be drawn from the
evidence. O'Ferral v. Coolidge, 228 S.W.2d 146, 148 (Tex. 1950); Crystal City Indep. Sch.
Dist. v. Crawford, 612 S.W.2d 73, 75 (Tex. Civ. App.--San Antonio 1980, writ ref'd n.r.e.).

 Appellants argue that the affiants' statement that they did not know of anyone who
knew of the marriage did not negate unequivocally that someone employed by the city possessed
actual knowledge. To support their argument, appellants cite Lewisville State Bank v. Blanton,
525 S.W.2d 696 (Tex. 1975). The supreme court in Blanton reversed a summary judgment on
the basis that an affidavit by an interested party stating matters of which the party's adversaries
had no knowledge or means of confirmation did no more than raise an issue of fact and is
incompetent to support summary judgment. Id. at 696. Blanton, the owner of legal title to real
property, sued to remove a cloud on his title placed there by judgment creditors of his predecessor
in title. The trial court granted Blanton's motion for summary judgment based on Blanton's
affidavit stating that he had acquired equitable title by agreement with his predecessor in interest
before the lien attached. The supreme court held that Blanton's affidavit did not conclusively
establish the essential facts, could not be readily, refuted and therefore would not support
summary judgment. Id. at 696. As in Blanton, appellants could not easily controvert CPSB's
assertion that it was without knowledge.

 Appellants also rely on Wise v. Dallas Southwest Media Corp., 596 S.W.2d 533,
536 (Tex. Civ. App.--Beaumont 1979, writ ref'd n.r.e.). In Wise, a public official brought a libel
action against a magazine. The magazine moved for summary judgment on the basis that the
article was not written with malice. Affidavits filed on behalf of the magazine stated the affiants'
belief that the challenged article was a fair and accurate statement. Thus, they claimed to disprove
malice as a matter of law. The court held that the unilateral subjective determination of facts and
opinions inferred from those facts did not constitute competent summary-judgment "evidence." 
Id. at 536. In the present cause, appellants were similarly confronted with disproving a state of
mind that could only be irrefutably confirmed by their adversaries. In response, CPSB argues that
the affidavit of a person in a position to know is sufficient to show no notice as a matter of law. 
Ursic v. NBC Bank South Texas, N.A., 827 S.W.2d 334, 336 (Tex. App.--Corpus Christi 1991,
writ denied) (affidavit of president and CEO of bank sufficient to show that neither he nor anyone
else at bank knew of adverse claim to property); Har-Con, 757 S.W.2d at 156 (affidavit of
corporate officer denying receipt of cancellation notice held sufficient to support summary
judgment). In Har-Con, the court denied summary judgment on the basis that the officer's denial
of receipt of notice raised an inference that the notice was not mailed. Cf. Jimmy Swaggart
Ministries v. City of Arlington, 718 S.W.2d 83, 86 (Tex. App.--Fort Worth 1986, no writ)
(testimony of three attorneys insufficient to rebut presumption that law firm received notice of
dismissal order). We reject CPSB's contention that Montgomery and Rinner's affidavits may be
used offensively to prove as a matter of law that CPSB had no notice. We follow instead the
supreme court's mandate in Blanton.

 The record shows that Rinner negotiated the contract with Milton and that
Montgomery drew up the contract for the city. The record does not reflect that these were the
only representatives of CPSB involved in the purchase. Nor does the record prove conclusively
that Montgomery and Rinner were without notice. CPSB, in its interrogatories to appellants,
asked each appellant what they knew about CPSB's knowledge of the marriage. Tabor, Rosalis,
and Bailey each answered, "[i]t seems very likely to me that Milton Mundine told somebody from
the City of San Antonio about the interest in the property." Clark answered:



It is my understanding that agents of the City of San Antonio, either through
conversations with Milton Mundine or Tim Kleinschmidt or the firm which
prepared an Abstract of Title, had knowledge of the items set forth in Interrogatory
No. 6. At the time the City of San Antonio paid L.F. Clark for some interest in
the Mundine tract, L.F. Clark told the San Antonio representative that there were
additional heirs whose interest had not been purchased. As I recall, the persons
present were including myself, the title company employees, the attorneys for the
City of San Antonio and Tim Kleinschmidt, and my wife, LaVern Clark.

 

 Both Milton and Tim Kleinschmidt, Clark's attorney, were deposed and neither
could recall whether they informed CPSB about Titus's marriage to Bessie. Milton testified that,
during his negotiations with Rinner regarding the sale of the land, Rinner had a preliminary list
of the Mundine family members who may have had an interest in the property and that they
discussed who should be included in the list. CPSB must first produce competent summary-judgment "evidence" to show conclusively that the city was without knowledge. Only then must
the appellants produce any controverting summary judgment proof of notice. City of Houston v.
Clear Creek Basin Auth., 589 S.W.2d 671, 678-79 (Tex. 1979); Pinckley v. Gallegos, 740
S.W.2d 529, 531 (Tex. App.--San Antonio 1987, writ denied). After indulging every reasonable
inference in favor of appellants, we are not persuaded that CPSB has met its burden of proof. We
sustain appellants' first point of error. Mr. Property Management Co., 690 S.W.2d at 548-49. 

 In their second point of error, appellants contend that the trial court erred in
granting Milton's motion for summary judgment. Appellants had requested the court to impose
a constructive trust, based on fraud, upon the money Milton received from the sale of the property
to CPSB. Milton moved for summary judgment on theories of limitation and failure of counter-plaintiffs to show the elements of constructive trust. The trial court did not specify which of
Milton's theories it relied upon in granting the summary judgment, therefore summary judgment
may be upheld on appeal if any of the theories advanced are meritorious. Tex. R. Civ. P. 166a;
Hayes v. E.T.S. Enters., 809 S.W.2d 652, 654 (Tex. App.--Amarillo 1991, writ denied).

 The discovery rule applies in an action for fraud. Thus, the four-year statute of
limitations, which applies in all actions based on fraud, begins to run from the time the fraud is
discovered or should have been discovered by a reasonably prudent person exercising reasonable
diligence. Williams v. Khalaf, 802 S.W.2d 651, 658 (Tex. 1990); Woods v. William M. Mercer,
Inc., 769 S.W.2d 515, 517 (Tex. 1988). Therefore, Milton, as a defendant seeking summary
judgment based on the affirmative defense of limitations, must prove as a matter of law when
appellants discovered or should have discovered the fraud. Burns v. Thomas, 786 S.W.2d 266,
267 (Tex. 1990). Milton submits as proof that the four year statute of limitations expired his
requests for admissions propounded to Rosalis, Tabor, and Bailey and the exhibits attached
thereto. The following requests were answered:



27. In 1984, Annie Rosalis, Alice Tabor and Joyce Bailey authorized attorney
Steven Keng to send a letter to the City of San Antonio asserting an interest
in the property.


RESPONSE: Admit that Rosalis, Tabor and Bailey authorized Keng in 1983 to
assert an interest in property described in Keng's letter attached as Exhibit "E"


28. A true and correct copy of the letter described in the preceding Request for 
Admission is attached hereto as Exhibit "E."


RESPONSE: Admitted


* * * *



30. In February of 1984, William F. Nowlin, an attorney acting on Plaintiff's
behalf, sent Steven Keng a letter stating San Antonio's position that you did
not own any interest in the property.


RESPONSE: Admitted



 Keng's letter, dated February 16, 1984, (3) stated that Rosalis, Tabor and Bailey
acknowledged CPSB's purchase of the property from Clark and Milton, but denied that appellants'
claim of an undivided one-sixth interest in the property was included in the purchase.

 By letter dated February 28, 1984, Nowlin, attorney for CPSB, notified Keng that
CPSB recently acquired all the property from Clark and Milton and that Rosalis, Tabor, and
Bailey no longer held any interest in the property. The letter explained that if a husband acquires
community property in his name only, his wife retains only an equitable interest, rather than a
legal interest. Further, Nowlin asserted that "[p]urchasers of the apparent legal title for value,
without notice of equities in the wife or her heirs, take free of such equities." After citing several
Texas Supreme Court cases, Nowlin clearly stated that CPSB "acquired the legal and equitable
title to the Property free and clear of and from any enforceable claim, right, title or interest of
your clients as the purported heirs of Bessie Mundine."

 Appellants assert that Nowlin's letter only put them on notice of CPSB's position
regarding appellants' claims of ownership, but did not alert them to any fraud that may have been
perpetrated by Milton. We disagree. Nowlin's letter unequivocally informs appellants that the
city denied having any knowledge of Bessie. Rosalis, Tabor, and Bailey are charged with the
knowledge a reasonably prudent person exercising due diligence would have discovered after
inquiry. Woods, 769 S.W.2d at 517; Courseview, Inc. v. Phillips Petroleum Co., 312 S.W.2d
197, 205 (Tex. 1957). Nowlin's letter was sufficient to put appellants on inquiry notice of any
fraud perpetrated by their uncle Milton. 

 Finally, appellants object to Nowlin's hearsay letter because, they contend, the
letter was offered to prove the truth of the matter asserted. On the contrary, Milton submitted
Nowlin's letter to show that the letter was received and that appellants had knowledge of its
contents. See Tex. R. Civ. Evid. 801. 

 Appellants Tabor and Bailey have not established an issue of fact by their affidavits
stating that they did not know that Milton had concealed from the city, until August 1991 Titus's
marriage to Bessie. The information provided in Nowlin's letter was more than sufficient to
prompt a reasonably prudent person to inquire into any matters surrounding the conveyance of the
property. Over seven years elapsed between the date of Nowlin's letter and the time that CPSB
filed its declaratory judgment action. We therefore overrule appellants' second point of error
based on the bar of the statute of limitations.



ATTORNEY'S FEES


 CPSB and Milton were awarded reasonable and necessary attorney's fees in the
amounts of $5,000 and $2,500 respectively. In a declaratory judgment action the trial judge may
award reasonable and necessary attorney's fees as are equitable and just. See Tex. Civ. Prac. &
Rem. Code Ann. § 37.009 (West 1986). The trial court's decision to award attorney's fees will
not be reversed on appeal absent a showing that the trial court abused its discretion. Oake v.
Collin County, 692 S.W.2d 454, 455 (Tex. 1985); Knighton v. I.B.M. Corp., 856 S.W.2d 206,
210 (Tex. App.--Houston [1st Dist.] 1993, writ denied). In light of our reversal of the trial-court
judgment granting summary judgment to CPSB, we also reverse the award of attorney's fees to
CPSB. 

 Milton submitted the affidavit of Pamela K. Giese in support of the court's award
of attorney's fees. Giese's affidavit states only that she is familiar with the fees charged by
attorneys in Lee and surrounding counties and that $2,500 represents a reasonable and necessary
fee in this case. Appellants complain that Giese's affidavit is conclusory in that it does not state
the number of hours worked, the nature of the work, or the usual fee Giese charges for the same
kind of work. We agree. In awarding attorney's fees, the trial court must consider the following
factors: (1) the nature and complexity of the case; (2) the nature of the services provided by
counsel; (3) the time required for trial; (4) the amount of money involved; (5) the client's interest
at stake; (6) the responsibility imposed upon counsel; (7) and the skill and expertise required. 
Ragsdale v. Progressive Voters League, 801 S.W.2d 880, 881 (Tex. 1990). The affidavit does
not speak to these relevant factors. Milton as movant for summary judgment did not meet his
burden of proof on attorney's fees. We hold accordingly that the trial court abused its discretion
in awarding attorney's fees to Milton in the amounts indicated.



CONCLUSION


 We reverse the portion of the trial-court judgment granting summary judgment in
favor of CPSB including the award of attorney's fees and remand that port of the cause to the trial
court. We also reverse that part of the judgment that awards Milton attorney's fees and remand
the cause to the trial-court. We affirm the remainder of the judgment.


 

 

 John Powers, Justice

Before Justices Powers, Aboussie and Jones

Reversed and Remanded in Part; Affirmed in Part 

Filed: March 8, 1995

Do Not Publish

1.   A bona fide purchaser is one who acquires the apparent legal title to real property in
good faith, for valuable consideration, and without actual or constructive notice of
outstanding third party claims. Tex. Bus. & Com. Code Ann. § 8.302 (West 1991).
2.   In part, Montgomery's affidavit states:


Neither I, as attorney for City of San Antonio, or to my knowledge any other
agent or representative of City of San Antonio, had either constructive or actual
notice of the existence of Bessie Mundine, or of the fact that Titus Mundine was ever
married or had any children, at the time City of San Antonio purchased the property
in question from Milton Mundine in May 1983.


Paragraph four of Rinner's affidavit states:


Neither the deed from Elbert Mundine to Titus Mundine (1940), nor the deed from
Titus Mundine to Milton Mundine (1955), nor any other document in the record
chain of legal title in Lee County, Texas, pertaining to the property described in
Exhibit A, refers to or mentions Bessie Mundine, or any wife of Titus Mundine. 
Accordingly, neither I, as the responsible landman for the City of San Antonio, nor
to my knowledge any other agent or representative of the City of San Antonio, had
either constructive or actual notice of the existence of Bessie Mundine, or the fact
that Titus Mundine was ever married or had any children, at the time San Antonio
purchased the property in question from Milton Mundine in May 1983.


(Emphasis added).
3.   Rosalis, Tabor, and Bailey state in response to request for admission twenty-seven that
Keng's letter to the City of San Antonio was written in 1983; however, their response to
request for admission twenty-eight admits that Exhibit "E" is a true and correct copy of the
letter. Exhibit "E" was dated February 16, 1984.